508 A.2d 1187

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant,

v.

PENNSYLVANIA HUMAN RELATIONS COMMISSION, Appellee.

Supreme Court of Pennsylvania.

Argued May 14, 1985.

Decided April 28, 1986.

402

Michael J. McCaney, Jr., Spencer A. Manthrope, Jay C. Waldman, Harrisburg, for appellant.

G. Thompson Bell, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION

McDERMOTT, Justice.

This is an appeal from the order of the Commonwealth Court affirming the Pennsylvania Human Relations Commission's determination that appellant, Commonwealth Department of Transportation (PennDOT), unlawfully discriminated against complainant, Richard E. Law, when it rejected his application for a position as Storekeeper II in the Berks County Maintenance Department on the basis of a non-job related handicap or disability.

While working as an equipment operator for PennDOT in 1976, complainant injured his back. The injury restricted his ability to safely lift heavy objects; his physician advised him to lift no more than twenty-five pounds. After reinjuring his back in early 1979, he was placed on permanent light duty and was soon assigned to work half of each work day in the Berks County Maintenance Department Storeroom. From April through October of 1979, complainant became familiar with the operation of the storeroom, and when an opening for the position of Storekeeper II was posted by PennDOT, he bid for the position. Another applicant, David Scrobe, also bid for the position. Neither complainant nor Scrobe were hired for the job. Eventually, an equipment operator, Kenneth Scheuring, was hired for the position.

On October 30, 1979, complainant filed a Complaint with the Pennsylvania Human Relations Commission (Commission) alleging that PennDOT refused to promote him on the basis of his handicap or disability, in violation of Section 5(a) of the Pennsylvania Human Relations Act (Act), 43 P.S. § 955(a), which states in pertinent part:

§ 955.  Unlawful discriminatory practices

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania:

(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required.

43 P.S. § 955(a).[1]

Prior to the hearing, counsel agreed that the case would be presented before the Chairperson of the designated three-member hearing panel, sitting alone, with the understanding that the other two designated panel members would review the complete record before making a recommended decision to the full Commission.[2]  The hearing was held on November 8, 1982, and January 10, 1983.

On October 13, 1983, the Commission adopted the recommended Findings of Fact, Conclusions of Law, and Opinion of the hearing panel.  In so doing, the Commission concluded: that complainant was a "handicapped or disabled person" within the meaning of the Act and pertinent regula-

1.  Act of October 27, 1955, P.L. 744, § 5, as amended, 43 P.S. § 955 (Supp.1965–1984).

2.  The full Commission is comprised of eleven commissioners.  43 P.S. § 956.  Three or more commissioners or a permanent hearing examiner designated by the Commission may constitute the Commission for any hearing.  43 P.S. § 959(g).  This provision may be waived and the hearing may be conducted before less than three commissioners.  16 Pa.Code § 42.102(a).  The full Commission must review and either approve or reverse the recommended findings, conclusions and order of the three member panel or permanent hearing examiner.  *Id.*

tions; that his handicap or disability was not "job-related"; and that complainant was qualified for, and physically able to perform the duties of the Storekeeper II position. In support of this latter conclusion the Commission found that the position did not require heavy lifting, and "numerous persons were available to assist when heavy lifting was required." [3] The Commission also found that PennDOT did not promote the complainant to the position based upon its belief that he was unable to perform the job because of his disability; and held that such refusal violated the prohibition against job discrimination because of a non-job related handicap or disability. The Commission ordered, *inter alia*, that PennDOT offer complainant the next available position of Storekeeper II in the Berks County Maintenance Department and awarded complainant back pay based on the Storekeeper II salary.

On appeal, the Commonwealth Court affirmed the Commission's adjudication and order. Upon petition we granted allocatur.

■ Among the arguments [4] of PennDOT which the Commonwealth Court rejected was the procedural complaint that each member of the Commission was required, but failed, to review the entire record before rendering an adjudication. Appellant contends that the failure of all of the voting members of the Commission to review the record before voting to approve or reject the recommended findings, conclusions and order of the hearing panel violated its due process rights.

3. Finding of fact # 23. The apparent inconsistency of this finding is addressed later in this opinion.

4. Other issues which the appellant has raised in this appeal include: that the complainant is not a "handicapped or disabled" person within the meaning of the Act; that the Commission's findings are based upon hearsay and other incompetent evidence; that accommodating complainant's alleged handicap by making other employees available to assist him when heavy lifting is required imposes an undue hardship on appellant; and that its due process rights were violated by use of a surprise witness and the presence of the prosecutor during the Commission's deliberations. Because of our resolution of the aforementioned issues, we choose not to address these latter issues.

Prior to the commencement of the hearing, appellant filed a "Motion to Insure Due Process Rights" in which it sought assurances from the Commission that all members who would vote on the outcome would first read the record. The Commission issued a pre-hearing order granting the motion only insofar as requiring the three commissioners assigned to hear the case to review the complete record before rendering a decision. At the commencement of the hearing, counsel for the appellant and the assistant general counsel to the Commission prosecuting the case stipulated that the commissioners who do not sit at the public hearing do not normally review the entire record, although the record is available to them. The recommendation of the three member hearing panel states that those three members considered the entire record, but there is no indication that any of the other commissioners reviewed the record before voting to approve the Recommendation.

In holding that due process is satisfied when the designated hearing panel reviews the record before making its Recommendation, the Commonwealth Court stated that the only statutory requirement is that "the recommended findings, conclusions and order made by said members or permanent hearing examiner shall be reviewed and approved or reversed by the Commission before such order may be served upon the parties to the complaint." *Commonwealth, Department of Transportation v. Commonwealth, Pennsylvania Human Relations Commission*, 84 Pa. Cmwlth. 98, 106, 480 A.2d 342, 347 (1984). Section 9(g) of the Act, 43 P.S. § 959(g).[5]

5. 43 P.S. § 959(g) provides:
§ 959. Procedure
. . . .
(g) The Commission shall establish rules or practice to govern, expedite and effectuate the foregoing procedure and its own actions thereunder. Three or more members of the Commission or a permanent hearing examiner designated by the Commission shall constitute the Commission for any hearing required to be held by the Commission under this act. The recommended findings, conclusions and order made by said members or permanent hearing examiner shall be reviewed and approved or reversed by the Commission before such order may be served upon the parties to the

We do not agree that the requirement that the full Commission review the recommended findings, conclusions, and order, is satisfied by a vacuous review of the Recommendation. The conclusions and order must be based on the findings of fact. No meaningful review of the findings of fact can be made without reference to the record. In order to properly review findings of fact, the record from which they are derived must be examined in order to determine if the findings are based on substantial evidence. To merely read the findings without examining the record in order to determine if those findings are supported is not to "review" those findings with the meaning and effect that tribunals regularly perform reviewing functions.

It is a principle of statutory construction that the legislature intends that every word of a statute is to be given meaning. *Matter of Employees of Student Services*, 495 Pa. 42, 432 A.2d 189 (1981); *Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312 (1979). In order to make "review" (the operative verb in the sentence of Section 9(g) under scrutiny) meaningful, it must be interpreted to require at least a reference to the record by all voting commissioners to determine if the recommended findings of fact are supported by the record. The Commission failed to perform such a meaningful review of the Recommendation in this case.

■ We therefore remand this case to the Commission for a full review of the record by the requisite eleven commissioners. We also direct that before such review is conducted, the Commission make more specific findings of fact regarding the requirements of the job for which complainant applied. One reason for this direction is that we read the Commission's crucial finding that the "Storekeeper II

complaint. The recommended findings, conclusions and order made by said members or permanent hearing examiner shall become a part of the permanent record of the proceeding and shall accompany any order served upon the parties to the complaint. Any complaint filed pursuant to this section must be so filed within ninety days after the alleged act of discrimination. Any complaint may be withdrawn at any time by the party filing the complaint.

position in 1979 did not require heavy lifting ... Numerous people were available to assist when heavy lifting was required" (finding of fact no. 23) as being inherently inconsistent. If the Commission finds that the job requires no lifting then they should say so; if the job entails some heavy lifting, *and there are persons whose job it is to assist the Storekeeper when lifting is required,* then the Commission should so find. In either case the Commission will have satisfied their burden that complainant's disability is not job-related. However, if the evidence establishes that the job does require lifting beyond complainant's capacity, and that PennDOT will be required to shift workers from their intended assignments to assist the applicant, then the Commission will be required to decide whether such requirement is a "reasonable accommodation" or imposes an "undue hardship" upon the employer. See 16 Pa.Code §§ 44.4; 44.14. In the absence of such specific findings we are unable to properly review the issue of whether complainant's disability was job-related or not.

Accordingly, we remand the record to the Commission for further proceedings consistent with this opinion.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the above-captioned appeal is remanded to the Commission for further proceedings consistent with this opinion.

HUTCHINSON, J., did not participate in the consideration or decision of this case.

PAPADAKOS, J., joins in the Majority Opinion and files a separate concurring opinion in which FLAHERTY, J., joins.

ZAPPALA, J., concurs in the result.

NIX, C.J., files a dissenting opinion.

PAPADAKOS, Justice, concurring.

I join with the Majority's Opinion that the Pennsylvania Human Relations Commission's failure to review the entire record compiled by its hearing examiner before issuing its adjudication in this matter was a violation of the requirements of 43 P.S. § 959(g), and that this matter must, therefore, be remanded to the Commission to give it the opportunity to conduct a full review of the record by the requisite eleven commissioners. As a part of its review process, I would direct that the Commission be required to draft findings of fact regarding the requirements of the job for which complainant applied, whether complainant's handicap disqualified him for consideration for the position sought and whether complainant sustained the burden of establishing that he was the best able and most qualified to perform the services required. 43 P.S. § 955(a).[1]

1. We unanimously granted allocatur in this case so that we could reach the issue of the proper allocation of burden of proof in an employment discrimination case governed by Section 5(a) of the Pennsylvania Human Relations Act. Section 5(a) of the Act, 43 P.S. § 955(a), provides in relevant part:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification ... (a) For any employer, because of the race, ... sex, ... of any individual to refuse to hire or employ, or to bar or to discharge, from employment such individual, or to otherwise *discriminate* against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, *if the individual is the best able and most competent to perform the services required.* (Emphasis added.)

Although this Court has twice considered the issue, it has yet to express a majority view and, thus, establish the rule to be followed in Pennsylvania. This Court first considered the issue in *General Electric Corp. v. Pennsylvania Human Relations Commission,* 469 Pa. 292, 365 A.2d 649 (1976) (Pomeroy J., joined by Eagen and O'Brien, JJ.—Chief Justice Jones dissented, and Manderino, Roberts and Nix, JJ. concurred in the result, and reached an issue not decided by Mr. Justice Pomeroy). In this plurality decision, Mr. Justice Pomeroy placed upon the employer the burden of demonstrating that the complainant was not the best able and most competent to perform the services required.

Commonwealth Court accepted this plurality conclusion and applied it in *Winn v. Trans World Airlines, Inc.,* 75 Pa.Commonwealth Ct. 366, 462 A.2d 301 (1983). Our Court granted allocatur and divided three-three, resulting in affirmance of Commonwealth Court. Mr. Justice Flaherty, joined by Messrs. Justice McDermott and Zappala, wrote the Opinion in Support of Reversal, while Mr. Chief Justice Nix

Under the current state of law, as set out in *McDonnell-Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and followed in this Commonwealth, a complainant makes out a prima facie case of discrimination if he establishes that he is a member of a protected minority, that he applied for a job for which he was qualified, that his application was rejected, and that the employer continued thereafter to seek other applicants of equal qualification. *Id.*, at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677. Our statute, in addition to these elements, includes the requirement that the complainant must have been the best able and most competent to perform the services required. I believe that the complainant bears the burden of demonstrating, as part of his prima facie case showing discrimination, that he was the best able and most competent to perform the services required, and that a finding of fact must be addressed by the Commission to this issue.

While this conclusion is contrary to our Court's plurality decision reached in *General Electric Corporation v. Pennsylvania Human Relations Commission*, 469 Pa. 292, 365 A.2d 649 (1976), which placed the burden upon the employer of demonstrating that complainant was *not* the best able and most competent to perform the services required, I feel that a fair reading of our statute and the parallel principles of fair employment law which have emerged relative to the corresponding federal statute, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., requires that *General Electric* be overruled and that we adopt the rule

filed an Opinion in Support of Affirmance in which Larsen, J. joined, Mr. Justice Larsen filed an Opinion in Support of Affirmance in which Nix, C.J. joined, and Mr. Justice Hutchinson filed an Opinion in Support of Affirmance. However, having granted allocatur in the instant case, the Court deemed it appropriate to grant reargument in the *Winn* case and avoid the possibility of inconsistent decisions with consequent injustice. This writer did not participate in the consideration or decision of the *Winn* case since he had been the trial judge at the Common Pleas level.

Thus, plurality decisions are guiding, or misguiding, the public on this important matter and it is appropriate that we finally reach a definite resolution with the participation of the full Court. The issue has been preserved and laid before us and is ripe for consideration.

and rationale as expressed by Mr. Justice Flaherty in his Opinion in Support of Reversal in *Winn v. Trans World Airlines, Inc.*, 506 Pa. 138, 484 A.2d 392 (1984), joined by McDermott and Zappala, JJ.

I find that the excellent opinion of Mr. Justice Flaherty succinctly and cogently analyzes the issue and reaches a conclusion in which I firmly join, as did Messrs. Justice McDermott and Zappala. I, therefore, adopt the opinion as follows:

"Although the independent status of our state Human Relations Act is not to be ignored, this Court has, in the interest of uniformity and predictability in enforcement of equal employment legislation, construed the Human Relations Act in light of principles of fair employment law which have emerged relative to the corresponding federal statute, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. *Chmill v. City of Pittsburgh*, 488 Pa. 470, 491, 412 A.2d 860, 871 (1980). It is argued that the federal precedents relied upon in *General Electric* did not support the holding in that case, but it is at least clear that supervening federal decisions have condemned the approach followed in that case. The federal courts do not require employers to prove that successful job applicants were more qualified than complainants, and, indeed, the Supreme Court of the United States has held it to be reversible error, in Title VII cases, to impose this burden upon employers. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 258–260, 101 S.Ct. 1089, 1096–1097, 67 L.Ed.2d 207, 218–219 (1981).

"Imposing such a burden upon employers, as is required under the *General Electric* rule, perhaps places the employer at risk when, given a choice among *equally* qualified candidates, or even a choice among those the employer merely fears may be regarded by the Commission as being at least arguably equally qualified, in the event the employer fails to select a minority applicant. Thus, the employer could be induced by the *General Electric* rule to *favor* minority applicants, rather than to provide, as was the

intent of the Human Relations Act, truly *equal* opportunities for *all* applicants. This fear was clearly expressed in *Burdine,* 450 U.S. at 259, 101 S.Ct. at 1096–1097, 67 L.Ed.2d at 219.

Title VII, however, does not demand that an employer give preferential treatment to minorities or women . . . . It does not require the employer to restructure his employment practices to maximize the number of minorities and women hired . . . .

[Requiring the employer to prove that the person hired was more qualified than the complainant would require] the employer to hire the minority or female applicant whenever that person's objective qualifications were equal to those of a white male applicant. But Title VII does not obligate an employer to accord this preference. Rather, the employer has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria. The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination. (citations omitted). Thus, the *General Electric* decision is clearly contrary to principles of fair employment law which have emerged relative to the federal analogue to Section 5(a) of the Pennsylvania Human Relations Act, viz. Title VII of the Civil Rights Act of 1964. Inasmuch as the *General Electric* rule was expressly promulgated for the primary purpose of conforming to principles of federal law, 469 Pa. at 303, 365 A.2d at 654–655, the rule's continued existence cannot be supported on that basis.

"The second reason advanced in *General Electric* for the rule announced therein was a purportedly pragmatic one, that the employer has better access to the facts which influenced an employment decision, and, therefore, that the employer should be required to prove that the complainant was not the 'best able and most competent' applicant, thus

saving the complainant from incurring the difficulty, time, and expense of establishing one's own relative qualifications. Upon reexamination of this rationale, however, it is clear that placing this burden upon the accused employer, merely because there has been an allegation of wrongdoing, is truly repugnant to the spirit of traditional approaches requiring that one who accuses of wrongdoing must bear the burden of proving its existence. The mere fact that the employer is in possession of facts relating to employment decisions is not reason to discard the normal requirement that complainants prove their own cases, for access to data in the employer's possession may be sought through the usual processes of discovery, and contents of the Commission's investigatory files may be sought by complainants. Thus, inasmuch as the *General Electric* decision rests upon a faulty rationale, it should be overruled.

"Pervasive federal regulation of employment matters has resulted in the development of an extensive body of federal precedents in the realm of employment discrimination law, and these precedents have been utilized in this Commonwealth, although not binding, as persuasive authority, particularly in regard to proof requirements. See *Caterpillar Tractor Co. v. Commonwealth Human Relations Commission*, 78 Pa.Commw. 86, 90, 466 A.2d 1129, 1132 (1983) ('The method by which these types of cases are to be adjudicated is now familiar.') Decisions of the Supreme Court of the United States have rested the ultimate burden of persuasion in federal employment discrimination cases squarely upon the complainant, rather than upon the employer. *U.S. Postal Service Board v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403, 410 (1983); *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. In its recent decision in *Aikens*, the Supreme Court of the United States summarized employment discrimination proof requirements as follows:

By establishing a prima facie case, the plaintiff in a Title VII action creates a rebuttable 'presumption that the employer unlawfully discriminated against' him. *Texas*

*Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). See *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). To rebut this presumption, 'the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.' *Burdine,* supra, 450 U.S., at 255, 101 S.Ct., at 1094. In other words, the defendant must 'produce evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.' Id., at 254, 101 S.Ct., at 1094.

But when the defendant fails to persuade the district court to dismiss the action for lack of a prima facie case, and responds to the plaintiff's proof by offering evidence of the reason for the plaintiff's rejection, the fact finder must then decide whether the rejection was discriminatory within the meaning of Title VII. At this stage, the *McDonnell-Burdine* presumption 'drops from the case,' id., at 255, n. 10, 101 S.Ct. at 1095, n. 10, and 'the factual inquiry proceeds to a new level of specificity.' Id., at 255, 101 S.Ct., at 1095....

> The 'factual inquiry' in a Title VII case is 'whether the defendant intentionally discriminated against the plaintiff.' *Burdine,* supra, at 253, 101 S.Ct., at 1093.... As we stated in *Burdine:* 'The plaintiff retains the burden of persuasion... [H]e may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.' 450 U.S., at 256, 101 S.Ct., at 1095.

460 U.S. at 713–716, 103 S.Ct. at 1481–1482, 75 L.Ed.2d at 409–411. (footnote omitted.)

The prima facie case referred to by the U.S. Supreme Court in *Aikens* has uniformly been regarded in the federal system, and, to the present, in this Commonwealth, as that set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Burdine,* 450 U.S. at

252–253, 101 S.Ct. at 1093, 67 L.Ed.2d at 215; *General Electric*, 469 Pa. at 304, 365 A.2d at 655–656. Under *McDonnell Douglas*, a complainant makes out a prima facie case of discrimination, in the usual case, if he establishes that he is a member of a protected minority, that he applied for a job for which he was qualified, that his application was rejected, and that the employer continued thereafter to seek other applications of equal qualification. 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677. The definition of a prima facie case, applicable to cases brought under Section 5(a) of the Pennsylvania Human Relations Act, should, in accordance with an overruling of the *General Electric* decision, be modified to include the additional showing by the complainant that he was the 'best able and most competent' applicant. This corresponds to the requirement in Section 5(a) of our Act, not found in the analogous provision of Title VII, that the complainant (sic) have been 'the best able and most competent to perform the services required,' in order for unlawful discrimination to be found."

Accordingly, I would remand the record to the Commission for further proceedings consistent with this Opinion.

FLAHERTY, J., joins this concurring opinion.

NIX, Chief Justice, dissenting.

I dissent from the majority's opinion and would hold that the Pennsylvania Human Relations Commission ("Commission") acted in accordance with the mandates of section 959(g) of the Pennsylvania Human Relations Act ("Act").[1]

Section 959(g) provides in part that "three or more members of the Commission or a permanent hearing examiner shall constitute the Commission for any hearing required to be held by the Commission under this Act." The role of the hearing panel is to conduct a complete evidentiary hearing and to set forth recommended findings of fact, conclusions of law and a proposed order for consideration by the eleven person Commission. 43 P.S. § 959(g). Upon the completion

1. Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§ 951–963 (Supp.1985).

of the hearing, section 959(g) further provides that the entire Commission "review and approve or reverse" the "recommended findings, conclusions and order" issued by the hearing panel. *Id.*

In the instant case, complainant, Richard E. Law, received a full evidentiary hearing by a single Commissioner after both parties agreed to waive the three member requirement.[2] Subsequently, a three member hearing panel reviewed the complete record and, based on the evidence adduced at the hearing, issued its recommendations to the Commission. The Commission then reviewed and approved the panel's finding that the Commonwealth Department of Transportation unlawfully discriminated against Mr. Law in violation of section 5 of the Act. 43 P.S. § 955. The Commission's order was affirmed by the Commonwealth Court.

I find it hard to conclude that the above hearing and review process is violative of our established standards of procedural due process. We have adhered to the principle that "due process is flexible and calls for such procedural protections as the particular situation demands." *Pennsylvania Coal Mining Association v. Insurance Dept.*, 471 Pa. 437, 449, 370 A.2d 685, 691 (1977), *citing Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

We further stated in *Pennsylvania Coal Mining Association, supra,:*

"[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961). We must

2. It is interesting to note that Appellant, who voluntarily relinquished its statutory right to have "three or more commissioners" preside over the full evidentiary hearing, now complains that its due process rights were violated because all of the eleven reviewing Commissioners do not read the entire record.

determine the private interest at stake, the value of any additional procedural safeguards, and the government's interest in proceeding without providing such procedures. *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

In deciding what procedures due process requires, we should consider the protections provided by procedures already available. *Id.; Boddie v. Connecticut*, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971).

*Pennsylvania Coal Mining Association, supra*, 471 Pa. at 449–50, 370 A.2d at 691.

Hence, in determining the extent of review that must be given by the eleven Commissioners, we should consider the protections provided by the procedures already in use. Here Appellant received a full evidentiary hearing by one Commissioner, a review of the complete record by three Commissioners, and a final review by all eleven Commissioners.

When the legislature provided that the entire Commission "review" the "recommended findings, conclusion and order issued by the hearing panel, 43 P.S. § 959(g), it could not have intended that each of the eleven Commissioners sift through every piece of evidence and fact presented at the hearing. It would be impractical for the entire Commission to duplicate the lengthy procedural scheme conducted at the hearing. The entire body of Commissioners cannot be expected to scrutinize the complete record, for if they were to do so, the body would become immobilized. By "review" the legislature could have only intended for the full Commission to determine whether the conclusions of law submitted by the three-member panel were supported by the findings of fact found by the panel and whether the proper legal doctrine was applied.

Furthermore, upon appeal to the Commonwealth Court, there is judicial review of the entire record. I am thus compelled to conclude that the Commission's present review

process under section 959(g) needs no additional procedural protections.

Accordingly, I dissent.