561 A.2d 1320

**PENNSYLVANIA STATE POLICE, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA HUMAN RELATIONS COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 8, 1989.

Decided July 21, 1989.

438

Joseph S. Rengert, Chief Counsel, Harrisburg, for petitioner.

Michael Hardiman, Asst. Counsel, with him, Patricia A. Miles, Asst. Chief Counsel, Philadelphia, and Elisabeth S. Shuster, Chief Counsel, Harrisburg, for respondent.

Before DOYLE and PALLADINO, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Before us is an appeal by the Pennsylvania State Police (Petitioner) from a second remand[1] to the Pennsylvania Human Relations Commission (Commission) after which the Commission reaffirmed its prior order in which it had determined that Petitioner discriminated against Almando Carrasquillo (Complainant) because of his Puerto Rican ancestry and ordered his reinstatement, with back pay, as a state trooper.

In *Pennsylvania State Police v. Pennsylvania Human Relations Commission*, 116 Pa.Commonwealth Ct. 89, 542 A.2d 595 (1988) (*PSP II*), we remanded this case to the Commission to reconsider its order in light of the Pennsylvania Supreme Court's discussion of the applicable burdens

---

**1.** In *Pennsylvania State Police v. Pennsylvania Human Relations Commission*, 99 Pa.Commonwealth Ct. 361, 512 A.2d 1355 (1986) (*PSP I*), this Court remanded to the Commission, directing that all of its members review the entire record before voting on whether or not to uphold its Hearing Commissioners' findings.

of proof in discrimination cases in *Allegheny Housing v. Pennsylvania Human Relations Commission*, 516 Pa. 124, 532 A.2d 315 (1987). On remand, the one remaining Hearing Commissioner revised her order to reflect compliance with the Supreme Court's guidelines and, by a vote of six to four (with one abstention), the Commission adopted the Hearing Commissioner's findings of fact and conclusions of law. Petitioner has again appealed, raising three issues for our consideration.

Petitioner contends that 1) the Commission erred as a matter of law in finding that its legitimate, non-discriminatory motives in discharging the Complainant were pretextual without a finding that the reasons advanced were fabricated; 2) that the Commission's order is not supported by substantial evidence; and 3) that the Commission's decision was procedurally improper. Because we find that the third issue is dispositive, we do not reach the substantive issues and reluctantly remand yet again.

The essence of Petitioner's argument on that issue is that the Commission's decision-making process is procedurally flawed, as evidenced by the copy of the minutes taken at the Commission's "compliance session," which preceded its June 27, 1988 meeting. At that session, the Commissioners, according to the reporter's summary,[2] discussed what their scope of review of the Hearing Commissioner's order should be. Commissioner Echols was of the opinion that he was to review the record to see whether there was sufficient evidence to substantiate the Hearing Commissioner's recommendation. If so, he would vote to affirm the order even though he personally might have come to a different conclusion. Although advised by counsel that "the Supreme Court order stating that all Commissioners must review the full record ... differs from the appellate standard stated by Commissioner Echols" (Minutes of Compliance Session, June 27, 1988), Commissioner Echols "said

---

2. In its brief, the Commission does not dispute the content of the summary, except to note that it is not a verbatim account of the discussion, which is obvious.

that if [counsel] were correct, the recommendation of the Hearing Panel would be meaningless and said he still feels that the law gives a Hearing Panel the right to make recommendations on credibility issues." (*Id.*) Chairman McGill, on the other hand, stated that he believed that the Pennsylvania Human Relations Act (Act)[3] required the Commissioners to read the entire record to determine for themselves all of the issues, including credibility determinations. This difference of opinion was apparently not resolved and the Commissioners proceeded to cast their votes at the meeting which followed, each presumably using his or her own idea of the nature of the requisite scope of review.

■ As noted above, the Commission does not argue that the contents of the minutes of the compliance session are inaccurate. Rather, it asserts that it performed its review functions as mandated by the Act and the Pennsylvania Supreme Court's interpretation of its role as expressed in *Commonwealth v. Pennsylvania Human Relations Commission*, 510 Pa. 401, 508 A.2d 1187 (1986). At oral argument, its counsel argued that this issue was a "red herring" and contended that the function of this Court was merely to review the Commission's adjudication and not its internal functioning or the opinions of its individual members. Because that adjudication is supported by substantial evidence, the Commission argues, our narrow scope of review[4] precludes us from disturbing it.

■ It is certainly true that the Commission *may* merely review the record to determine whether the findings of fact and conclusions of law of its hearing officers[5] are sup-

3.  Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–963.

4.  Our scope of review, of course, is limited to a determination of whether there was a violation of constitutional rights, an error of law, or whether the findings of fact necessary to support the adjudication are supported by substantial evidence. *PSP II.*

5.  The Commission's practice is to designate either a Permanent Hearing Examiner or a panel of three Commission members (Hearing Commissioners) to conduct its public hearings. *See* Section 9(g) of the Act, 43 P.S. § 959(g); 16 Pa.Code § 42.101(c). For convenience,

ported by substantial competent evidence. The Supreme Court decision in *Commonwealth v. Pennsylvania Human Relations Commission* made that patently clear in its discussion of the issue of whether all eleven members of the Commission were required to review the entire record before issuing their order: [6]

> In order to properly review findings of fact, the record from which they are derived must be examined in order to determine if the findings are based on substantial evidence. To merely read the findings without examining the record in order to determine if those findings are supported is not to 'review' those findings with the meaning and effect that tribunals regularly perform reviewing functions.
>
> It is a principle of statutory construction that the legislature intends that every word of a statute is to be given meaning. *Matter of Employees of Student Services*, 495 Pa. 42, 432 A.2d 189 (1981); *Commonwealth v. Driscoll*, 485 Pa. 99, 401 A.2d 312 (1979). In order to make 'review' (the operative verb in the sentence of Section 9(g) under scrutiny) meaningful, it must be interpreted to require *at least* a reference to the record by all voting commissioners to determine if the recommended findings of fact are supported by the record.

*Id.*, 510 Pa. at 407, 508 A.2d at 1190 (emphasis added). This language, however, does not address the precise question now before us: whether the Commission is *empowered* to independently evaluate the facts of each case.

Unlike the Commission, we deem this to be an important issue. Especially in a case such as this, where the sharply divided vote is evidence that the facts are anything but clear, it is crucial that each Commissioner understand his or her role in the fact-finding process. This is particularly true in this area of the law, where the inferences drawn

we shall refer to the Permanent Hearing Examiner and Hearing Commissioners individually or collectively as "hearing officer(s)."

6. It is this decision which prompted our initial remand of this case in *PSP I.*

from the factual findings are so often dispositive of the final outcome of a case. We question whether a factfinder can be said to have performed meaningful review if he elects to affirm the recommended findings merely because he believes they represent a possible view of the evidence, despite the fact that they do not represent his own view.

██ This Court has repeatedly held that it is up to the Commission to determine the weight and credibility of the evidence.[7] In *PSP II*, we stated: "it is the Commission's task to weigh the evidence, both direct and circumstantial, to credit and discredit testimony, to draw inferences and make *ultimate findings of fact* as to whether a violation of the Act occurred." *Id.*, 116 Pa.Commonwealth Ct. at 98, 542 A.2d at 600 (emphasis added). This, of course, means that the Commission is empowered to substitute its findings for that of its appointed hearing officers.

An analysis of the applicable statutory provisions and the regulations promulgated thereunder supports this conclusion. Section 9 of the Act provides in part:

(f) If, upon all the evidence at the hearing, the Commission shall find that a respondent has engaged in or is engaging in any unlawful discriminatory practice as defined in this act, the Commission shall state its findings of fact, and shall issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful discriminatory practice .... ... If, upon all the evidence, the Commission shall find that a respondent has not engaged in any such unlawful discriminatory practice, the Commission shall state its findings of fact, and shall issue and cause to be served on the complainant an order dismissing the said complaint as to such respondent.

7. See, e.g., Beaver Cemetery v. Pennsylvania Human Relations Commission, 107 Pa.Commonwealth Ct. 190, 528 A.2d 282 (1987); Thomas v. Pennsylvania Human Relations Commission, 106 Pa.Commonwealth Ct. 598, 527 A.2d 602 (1987); Harmony Volunteer Fire Company v. Pennsylvania Human Relations Commission, 73 Pa.Commonwealth Ct. 596, 459 A.2d 439 (1983).

(g) The Commission shall establish rules or practice to govern, expedite and effectuate the foregoing procedure and its own actions thereunder. Three or more members of the Commission or a permanent hearing examiner designated by the Commission shall constitute the Commission for any hearing required to be held by the Commission under this act. The *recommended* findings, conclusions and order made by said members or permanent hearing examiner shall be reviewed and approved or reversed by the Commission before such order may be served upon the parties to the complaint. The recommended findings, conclusions and order made by said members or permanent hearing examiner shall become a part of the permanent record of the proceeding and shall accompany any order served upon the parties to the complaint.

43 P.S. § 959(f), (g) (emphasis added).

The Commission's regulations provide:

### § 42.141. Final orders.

(a) If, upon all the evidence, the Hearing Commissioners or the Permanent Hearing Examiner find that a respondent has engaged in any unlawful discriminatory practice, the Commissioners or the Examiner shall state findings of fact, conclusions of law and *recommendation,* on the basis of which the Commission *may* issue and cause to be served on such respondent an order requiring such respondent to cease and desist from such unlawful discriminatory practice and to take affirmative action *where the Commission determines it to be appropriate.*

(b) If, upon all the evidence the Hearing Commissioners or the Permanent Hearing Examiner find that a respondent has not engaged in an unlawful discriminatory practice, they shall state their findings of fact, conclusions of law, and recommendation on the basis of which the Commission *may similarly issue an order* dismissing the complaint.

. . . .

(e) Final orders will be those orders which are dispositive of the case.

16 Pa.Code § 42.141(a), (b), (e) (emphasis added).

█ From these two provisions, it is clear that the role of the hearing officers was intended to be advisory only. The statute itself refers to "recommended" findings and conclusions and provides for approval or reversal of those recommendations by the Commission following its review. The regulation provides that the hearing officers are to make findings of fact, conclusions of law and a recommendation to the Commission, which then may issue an appropriate order.

Accordingly, we reiterate that the Commission is the ultimate factfinder, with the power to substitute its findings for that of the hearing officers it appoints. Because it is apparent that at least one member of the Commission misapprehended his role and the extent of the Commission's power to independently evaluate the evidence upon review, we are compelled to remand with directions to the Commission members to review the findings of fact, conclusions of law and recommendation of the hearing officer and to issue an appropriate order.[8]

## ORDER

AND NOW, this 21st day of July, 1989, the order of the Pennsylvania Human Relations Commission in the above-captioned matter is hereby vacated and the case is remanded for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

8. Nothing in this opinion is intended to prevent the Commission from adopting its hearing officers' findings of fact, conclusions of law and recommendations where appropriate. We merely wish to emphasize that the Commission *may*, again where appropriate, issue its *own* findings, conclusions and order and that it is in no way constrained to accept those of the hearing officers even where they may be said to be supported by substantial competent evidence, if the Commission members determine that contrary findings and conclusions should be drawn from the evidence presented.