Wes STASZAK, Petitioner,

v.

**PENNSYLVANIA HUMAN
RELATIONS COMMISSION,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 3, 1999.

Decided Jan. 13, 2000.

Reargument Denied March 10, 2000.

Dianna C. Wyrick, Pittsburgh, for petitioner.

Lisa Jo Fanelli-Greer, Harrisburg, for respondent.

Before McGINLEY, J., KELLEY, J., and JIULIANTE, Senior Judge.

KELLEY, Judge.

Wes Staszak petitions for review of an order of the Pennsylvania Human Relations Commission (Commission) which ordered Staszak to, *inter alia:* (1) permanently cease and desist from engaging in any acts or practices which have the purpose or effect of denying equal housing opportunities because of disability; (2) pay Michael Kiel $71.50 in travel expenses and $8,000 in damages for humiliation suffered and for a lost housing opportunity; and (3) pay a civil penalty of $2,000. We reverse.

Michael Kiel filed a complaint with the Commission against Staszak alleging housing discrimination based upon Kiel's handicap, quadriplegic, in violation of Sections 5(h)(1), 5(h)(3), 5(h)(3.1), 5(h)(5), 5(h)(6) and 5(h)(7) of the Pennsylvania Human Relations Act.[1] Staszak filed an answer denying all the substantive allegations of the complaint. Following an investigation, the Commission approved a probable cause finding. Subsequent to the finding of probable cause, efforts were made to eliminate the alleged discrimination. When these efforts failed, a public hearing was scheduled before a hearing officer. The relevant facts are as follows.

For over thirty years, Staszak's principal residence has consistently been in Pittsburgh, Pennsylvania. In approximately 1970–71, Staszak purchased the subject property located in Edinboro, Pennsylvania, near Edinboro University. From about mid-May through August,

---

1. Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, *as amended,* 43    P.S. §§ 955(h).

Staszak and his family regularly occupied the property. For twenty years, the property was rented during the academic year to students attending Edinboro University.

In August 1994, Kiel, a quadriplegic, disabled from the shoulders down, decided to attend Edinboro University. In 1994, Kiel's personal caregiver was Pamela Stoltz, a certified nurse's aide. Kiel and Stoltz both decided to matriculate and it was mutually beneficial if they rented an apartment together. A realtor was contacted and one property was considered but then rejected because it was too small, had a dirt driveway, and no sidewalk leading to the house. The realtor later told Kiel and Stoltz of Staszak's property including the fact that the property had a level concrete driveway. Stoltz telephoned Staszak regarding the property on August 16, 1994.

Staszak and Stoltz discussed keeping the property clean and neat, the need for a security deposit and a time as to when Stoltz and Kiel could come to Edinboro to look at the property. Stoltz mentioned that she was a caregiver, which prompted Staszak to inquire whether Stoltz or Kiel was handicapped. Stoltz informed Staszak that Kiel was confined to a wheelchair. Staszak stated that he did not rent to handicapped individuals, that the residence was not handicap accessible, that the doorways were standard and that the hallways were too narrow. Staszak also expressed that he was unsure if his insurance would cover him if he rented to an individual with a disability. Staszak informed Stoltz that he would call his insurance company and

get back to her regarding whether he could rent to her and Kiel. When Stoltz told Kiel that there was a problem because he was in a wheelchair, Kiel contacted his father, who is a contractor.

Kiel's father called Staszak and Staszak told Kiel's father that the property was not accessible. Kiel's father informed Staszak that he could install a temporary ramp, at his own expense, and remove it at the end of Kiel's tenancy. Staszak then expressed that Kiel's wheelchair would not fit through the doorways, that they were standard. At that time, Staszak had never measured the doorways. Kiel's father indicated that Kiel's wheelchair was designed to fit standard openings. Feeling that Staszak was either hedging or making excuses, Kiel's father asked Staszak directly "Are you telling me that you will not rent to Kiel because he's in a wheelchair?" Staszak answered "yes." Kiel never personally spoke with Staszak nor did Kiel or Stoltz ever see inside the rental property. Kiel's wheelchair could have fit through only the front door of the property and would not have been accessible to any other room of the property.

Staszak took the property off the market until December 1994 at which time the property was leased to individuals who vacated the unit in April 1995. A few days after the calls to Staszak in August, Stoltz and Kiel rented the smaller property they had been shown earlier by the realtor.

The hearing examiner found that Staszak's property is a housing accommodation within the meaning of the Act,[2] that it was not a bona fide personal residence[3] during

---

**2.** Pursuant to Section 4 of the Act, "[t]he term 'housing accommodations' includes (1) any building, structure, mobile home site or facility, or portion thereof, which is used or occupied or is intended, arranged or designed to be used or occupied as the home residence or sleeping place of one or more individuals, groups or families whether or not living independently of each other; and (2) any vacant land offered for sale, lease or held for the purpose of constructing or locating thereon any such building, structure, mobile home site or facility. The term 'housing accommodation' shall not include any personal resi-

dence offered for rent by the owner or lessee thereof or by his or her broker, salesperson, agent or employe." 43 P.S. § 954(i).

**3.** Pursuant to Section 4 of the Act, "[t]he term 'personal residence' means a building, or structure containing living quarters occupied or intended to be occupied by no more than two individuals, two groups or two families living independently of each other and used by the owner or lessee thereof as a bona fide residence for himself any members of his family forming his household." 43 P.S. § 954(k).

the time that Staszak leased the property, and that Kiel presented direct evidence that Staszak violated Sections 5(h)(1), 5(h)(5) and 5(h)(6) of the Act.[4] With respect to the determination that the property was not a bona fide personal residence, the hearing examiner found that during the summer it was Staszak's personal residence; however, when he offered it for rent, he physically moved out and the tenants moved in. Thus, for the periods that Staszak relinquished all physical control of the rental property, the character of the property changed to rental property subject to the Act.

With respect to the violations of Section 5(h) of the Act,[5] the hearing examiner determined that the credible testimony of Stoltz and Kiel's father supported a finding: (1) that Staszak refused to rent to Kiel because he was disabled; (2) that Staszak's statements to that effect amounted to direct evidence of a publication of a statement which indicates a preference, limitation, specification or discrimination based upon Kiel's disability; and (3) that Staszak unlawfully inquired whether Kiel or Stoltz were handicapped. The hearing examiner specifically rejected Staszak's testimony as not credible.

Accordingly, the hearing examiner determined that Staszak should reimburse Kiel for his travel expenses to attend the public hearing and that Staszak should pay Kiel $8,000 in damages to compensate Kiel for humiliation and embarrassment and for the loss of a housing opportunity. The hearing examiner also assessed a $2,000 civil penalty against Staszak for his discriminatory conduct.

**4.** Section 5(h)(1) provides that it is an unlawful discriminatory practice for any person to refuse to lease or otherwise deny or withhold any housing from any person because of the disability of any person. 43 P.S. § 955(h)(1). Section 5(h)(5) provides that it is an unlawful discriminatory practice for any person to publish or circulate any statement relating to the lease of any housing accommodation which indicates any preference, limitation, specification, or discrimination based upon disability. 43 P.S. § 955(h)(5). Section 5(h)(6) provides that it is an unlawful discriminatory practice for any person to make any inquiry or elicit any information concerning the disability of an individual in connection with the lease of any housing accommodation. 43 P.S. § 955(h)(6).

**5.** Kiel's complaint against Staszak also alleged housing discrimination based upon Section 5(h)(3) and Section 5(h)(7) of the Act. Section 5(h)(3) provides that it is an unlawful discriminatory practice for any person to discriminate against any person in the terms or conditions of leasing any housing accommodation because of the disability of any person. 43 P.S. § 955(h)(3). The hearing examiner determined that because there was no lease between Kiel and Staszak, there was no violation of Section 5(h)(3).

Section 5(h)(7) of the Act makes it an unlawful discriminatory practice for any person to offer for lease or rent or otherwise make available housing which is not accessible. 43 P.S. § 955(h)(7). The term "accessible" is defined in the Act as being in compliance with the applicable standards set forth in the Fair Housing Act, 42 U.S.C. 3601, the American with Disabilities Act of 1990, 42 U.S.C. § 12101, and the Act of September 1, 1965, P.L. 459, *as amended*, 71 P.S. §§ 1455.1–1455.3b, an act requiring that certain buildings and facilities adhere to certain principles, standards and specifications to make the same accessible to and usable by persons with physical handicaps. Section 4(v) of the Act, 43 P.S. § 954(v). However, the hearing examiner determined that Staszak's property was not required to be in compliance with the foregoing statutes because the cottage located thereon was built in the 1950s. The Fair Housing Act's accessibility standards require compliance of newly constructed multi-family dwellings with four or more units if the buildings involved are ready for first occupancy after March 13, 1991. The Americans with Disabilities Act imposes accessibility requirements on government controlled housing only and the Act of September 1, 1965, commonly known as the Universal Accessibility Act, only applies to privately owned rental units if the buildings were either constructed or remodeled on or after September 1, 1965. Accordingly, the hearing examiner found that there was no violation of Section 5(h)(7) of the Act. We also note that the Fair Housing Act prohibition against discrimination in the sale or rental of housing does not apply to any single-family house sold or rented by an owner provided that such private individual owner does not own more than three such single-family houses at any one time. 42 U.S.C. § 3603.

By order entered March 30, 1999, the Commission adopted the stipulations of fact, the hearing examiner's findings of fact, conclusions of law and opinion as it own findings in this matter, and ordered Staszak to: (1) permanently cease and desist from engaging in any acts or practices which have the purpose or effect of denying equal housing opportunities because of disability; (2) pay Michael Kiel $71.50 in travel expenses and $8,000 in damages for humiliation suffered and for a lost housing opportunity; (3) pay a civil penalty of $2,000; (4) post a "fair housing practice" notice alongside any "for rent" signs posted in connection with any rental unit he owns; (5) submit copies of all applications and a log of all persons who applied for occupancy of Staszak's rental property, sample copies of advertisements for rental of the property, and a list of all persons who inquired in writing, in person, or by telephone about renting Staszak's rental property including the disposition of any inquiry. This appeal followed.[6]

Herein, Staszak raises the following issues for this Court's review:

1. Whether the Commission erred when it held that the property in which Staszak lived for several months each year is not a personal residence, which is exempt under the Act.

2. Whether the Commission erred when it held that Staszak violated the Act despite the fact that the property was not wheelchair accessible, it could not have been modified to be wheelchair accessible, and Staszak truthfully conveyed these facts to Kiel's personal representatives when they inquired about renting the property.

3. Whether the Commission violated Staszak's constitutional right to due process by permitting testimony, which was highly prejudicial and completely irrelevant to the complaint before the Commission.

With respect to the first issue, Staszak argues that the property in question is a personal residence, which is exempt from the Act. Staszak points out that the Act only applies to housing accommodations and the term "housing accommodations" specifically exempts any personal residence offered for rent. Staszak contends that the summer property at issue here is exactly the type of home which the General Assembly intended to exempt from the provisions of the Act. The Commission determined that the property was a personal residence in the summer but then held that the character changed to rental property when it is rented. This, Staszak's argues, is in contravention of the Act because although personal residences offered for rent are specifically exempt by the Act, the Commission held that the property cannot be a personal residence if it is offered for rent. Staszak contends that, therefore, under the Commission's reasoning, the mere act of offering the home for rent brings it within the Act.

In response, the Commission argues that it is clear from the Act and the regulations that when the owner of the property moves out and no longer uses the property as his residence, the property ceases to be a "personal residence" for the purposes of the Act. The Commission contends that here, Staszak rents the property out from September through May. His personal property is taken down and locked in a room. He then does not reenter the property until after the tenant leaves. The Commission contends that during the time that the tenant resides at the property, Staszak relinquishes control of the property to the tenant. Thus, the Commission argues, the property is not a personal residence when it is leased out to others.

The term "personal residence" is defined by the Act to mean "a building or struc-

---

**6.** This Court's review of a determination of the Commission is limited to whether there was a violation of constitutional rights, an error of law, or whether the findings of fact necessary to support the determination are supported by substantial evidence. *Pennsylvania State Police v. Com., Pennsylvania Human Relations Commission*, 127 Pa.Cmwlth. 436, 561 A.2d 1320 (1989).

ture containing living quarters occupied or intended to be occupied by no more than two individuals, two groups or two families living independently of each other and used by the owner or lessee thereof as a bona fide residence for himself and any members of his family forming his household." Section 4(k) of the Act, 43 P.S. § 954(k). The regulations adopted by the Commission define personal residence as:

> A duplex house or other house in which the owner thereof maintains a bona fide residence for himself. The term does not include a building containing three or more separate living quarters occupied or intended to be occupied by individuals or families living independently of each other, whether or not the owner maintains a bona fide residence therein. A building or structure occupied and used by the owner shall lose its identity as a personal residence when the owner moves out of the building and no longer uses it as a bona fide residence for himself.

16 Pa.Code § 45.4(b).

As indicated by the language of the Act and the regulations, a property ceases to be a personal residence when the owner moves out of the building and no longer uses it as a bona fide residence for himself. Contrary to the Commission's conclusion in the present case, the evidence shows that Staszak does not cease to use the property as a bona fide residence during the time that the property is being rented. As the record shows, when the property is rented, Staszak does not remove any items or personal property, such as linens, family pictures, furniture, kitchen items, or clothing, from the home. Reproduced Record (R.R.) at 156a; 173a–174a. During the time the property is rented, Staszak's personal property and other items are locked in a bedroom located within the house to which the tenants do not have access. *Id.* The furniture, appliances and some tools are left in the property for the tenant's use. *Id.* at 173a. Phone service and cable

service remain in Staszak's name and Staszak receives mail at the property's address during the time that the property is rented. *Id.* at 159a. When the school term ends, Staszak returns to the property for the summer months. Thus, Staszak never totally relinquishes control of the property to the tenants at any time nor does Staszak "move out" of the residence as that term is commonly known.

Accordingly, the Commission erred by concluding that during the time that the property is rented, the property ceases to be Staszak's personal residence. Because the property in question is a personal residence offered for rent, it is exempt from the requirements of the Act. Therefore, the Commission's order is reversed.[7]

### ORDER

AND NOW, this 13th day of January, 2000, the order of the Pennsylvania Human Relations Commission entered in the above captioned matter is reversed.

Judge McGINLEY dissents.

---

7. Based on our resolution of the issue of whether the property in question is a personal residence offered for rent, we need not address the remaining issues raised by Staszak in this appeal.