511 A.2d 941

Stuart Ross, Appellant *v.* Civil Service Commission, City of Philadelphia, Appellee.

Argued December 10, 1985, before President Judge CRUMLISH, JR., Judge BARRY, and Senior Judge BLATT, sitting as a panel of three.

*F. Emmett Fitzpatrick, Jr.,* with him, *Michael A. Tier,* for appellant.

*John P. Straub,* Deputy City Solicitor, for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., July 8, 1986:

Stuart Ross was dismissed from the Philadelphia Police Department for conduct unbecoming an officer. The City Civil Service Commission and the Philadelphia County Common Pleas Court order upheld Ross' discharge. Ross appeals the common pleas court order; we vacate and remand.

Ross was discharged for (1) making a false arrest, (2) knowingly making a false entry in a department report, (3) failing to report the existence of an illegal activity and (4) being arrested and charged with bribery and related criminal counts.[1]

On August 25, 1982, Ross, on his seventh day of assignment to the vice squad in the 18th Police District, arrested Tyrone Rowland for participating in an illegal lottery operation. Upon his release from detention the following day, Rowland telephoned police authorities and stated that his arrest was part of a pre-arranged agreement between Vincent Garrett, the proprietor of an illegal lottery operation, and certain unnamed local police officers. The Police Internal Affairs Bureau initiated an investigation into these allegations and subsequently arrested Ross. Upon his arrest, Ross was notified that he would be dismissed from the police force. A Philadelphia County Common Pleas Court Judge acquitted Ross of all criminal charges.[2]

The Commission, after hearings, upheld Ross' discharge because it found the testimony of Rowland and the Internal Affairs investigator to be credible and the testimony of Ross to lack credibility.

This Court must affirm a Commission adjudication unless an employee's constitutional rights were violated, an error of law was committed, any procedural irregularities exist, or the findings of fact are not supported by substantial evidence. *Foley v. Civil Service Commission, City of Philadelphia,* 55 Pa. Commonwealth Ct. 594, 423 A.2d 1351 (1980).

---

[1] Specifically, Ross was charged with bribery in official matters, obstructing the administration of law, unsworn falsification, official oppression, false swearing and conspiracy.

[2] The bribery charge was dropped at the preliminary hearing in Philadelphia Municipal Court.

Ross contends that the Commission erred as a matter of law in permitting the results of a lie detector test administered to Rowland to be introduced into evidence and that the Commission abused its discretion in determining the credibility of Rowland and himself.[3]

The record reveals that Rowland was the first witness to testify at the Commission hearing. After giving his account of his "fall-guy" arrest,[4] Rowland was repeatedly cross-examined on inconsistencies between his current testimony and his testimony at Ross' criminal hearings.[5] Rowland's testimony conflicted as to (1) his conversation with the arresting officers, (2) whether he was ever searched during his arrest and (3) whether he threatened to burn Garrett's house.

An inspector from the Internal Affairs Bureau testified next, and he stated that a surveillance was established to investigate Rowland's allegations. Although Ross was never observed participating in subsequent "fall-guy" arrests, other officers were discovered. The inspector testified that the department verified Rowland's credibility by giving him a polygraph test. A Commis-

---

[3] Ross' contention that his due process rights were violated because one of the three Commission members temporarily left the hearing lacks merit. The Commissioner stated on the record that he was informed by his fellow Commissioners what had transpired. N.T., 5/17/83, p. 93.

[4] The trial court described a "fall guy" arrest as:

A 'fall guy' gets paid money to be arrested with less than 1000 numbers on him, insuring that no prosecution will occur because of District Attorney Office policy. The fall guy is freed after a few hours. The police force gets another vice 'bust' on its record. The numbers operator in the vicinity of the fraudulent arrest pays the police and the numbers business continues to operate.

Slip op. at 1-2.

[5] The transcripts of Ross' preliminary hearing in municipal court and his trial in common pleas court were part of the record before the Commission.

sioner overruled Ross' objection to the test's admissibility and stated that the Commission could use polygraph results to determine an individual's credibility.[6]

In *Township of Silver Spring v. Thompson,* 90 Pa. Commonwealth Ct. 456, 496 A.2d 72 (1985), we held that the results of a polygraph examination given to a police officer were inadmissible at his dismissal hearing absent evidence that polygraph tests are scientifically reliable.[7] We believe that the results of the polygraph test given to the witness in this case are also inadmissi-

---

[6] Commissioner Bailey stated, in response to the objection: Let me—let me—let me respond to you this way, Mr. Freeman, if we can, so we can be brief and not tie us up inordinately on procedural matters—let me just say to you that the Commission has far and wide ranging powers with respect to the right to have hearsay on the record; let me say, also, we can take certain testimony with regard to a polygraph examination for the simple purpose of our considering that, if we wish, in terms of determining whether or not an individual is credible. You—you—one has to keep in mind that what you have here is a witness who has, in effect, constituted a source of information for the Police Department; it has obviously accepted a good deal of that testimony as quite legitimate. Now, it has to have a rationale for accepting as legitimate—what is that rationale? What the Inspector, here, is doing is pointing out some of the rationale which went into that, and in the final analysis, the Commission will have to determine the credibility of—of—of—we'll have to take into consideration the whole business of the polygraph, in the first instance, and secondly, obviously, the credibility of an individual who has come before courts of law himself. So we are going to note you have a continuing objection, for the record, but we are going to permit the witness to testify with regard to the results of that polygraph test.
N.T., 5/17/83, p. 64.

[7] We distinguish *McMullin Appeal,* 41 Pa. Commonwealth Ct. 474, 401 A.2d 572 (1979), because

in that case we held *only* that mere references to a polygraph examination were non-prejudicial where the results

ble. The record is void of any evidence demonstrating the scientific reliability of the tests. Moreover, the officer who administered the test was not present at the hearing.

We reject the Commission's argument that since the polygraph results are not mentioned in its opinion, we should assume that it did not rely on them in making its decision.

We are convinced that the admission of the polygraph test results so tainted Ross' hearing that the order must be vacated and a new hearing be held.

The record reveals little corroboration of Rowland's testimony as to Ross' conduct absent the test results. The Internal Affairs Bureau had no firsthand knowledge of Ross' conduct on the day Rowland was arrested. However, it is clear that Rowland spent more than twenty-four hours incarcerated and not four hours which he believed he would. Ross' complicity with a "fall-guy" arrest or protection of an illegal lottery operation is not demonstrated anywhere else in the record.[8]

However, it is the duty of the Commission and not this Court to determine the credibility of witnesses testifying before it. *Civil Service Commission of Philadelphia v. Saladino*, 47 Pa. Commonwealth Ct. 249, 408 A.2d 178 (1979).

The common pleas court order is vacated. The Commission's order is vacated and this case is remanded

---

of the examination were not relied upon by the adjudicative body and the officer's dismissal was supported by other substantial evidence in the record.

*Thompson*, 90 Pa. Commonwealth Ct. at 461, 496 A.2d at 74 (emphasis in original).

[8] The Commission found that Rowland did not write the numbers he was arrested with, crediting the department's handwriting expert over Ross' expert. However, this evidence alone does not support the conclusion that Ross was associated in an agreement to protect an illegal lottery operation.

to the Commission for a new hearing in which the results of the polygraph test given to Rowland shall not be admitted unless their scientific reliability is established by expert testimony.

### ORDER

The Philadelphia County Common Pleas Court order, No. 1215 February Term 1984, dated November 9, 1984, is vacated. The Philadelphia Civil Service Commission's order dated January 25, 1984, is vacated and this case is remanded to the Civil Service Commission for a new hearing consistent with the foregoing opinion.

Jurisdiction relinquished.