588 A.2d 497

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA HUMAN RELATIONS COMMISSION, Appellant,**

v.

**JOHNSTOWN REDEVELOPMENT AUTHORITY, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 28, 1990.

Decided March 25, 1991.

Nix, C.J., and Larsen, J., filed separate dissenting opinions.

Francine Ostrovsky, Asst. Chief Counsel Pennsylvania Human Relations Com'n, Harrisburg, for appellant.

William G. Barbin, Gleason, DiFrancesco, Shahade and Markovitz, Johnstown, Andrew W. Barbin, King of Prussia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

We granted Allocatur to address the issue of whether the decision of the Pennsylvania Human Relations Commission (hereinafter "the Commission") was correct in finding that Johnstown Redevelopment Authority (hereinafter "the Authority") unlawfully discriminated against Eula L. Morris when they failed to hire her. For the reasons that follow, we find that the Commission's determination that the Authority discriminated against Ms. Morris was not supported by substantial evidence.

## FACTS

The facts as found by the Commission are as follows. Ms. Eula L. Morris, a Black woman, applied for a job with the Authority in or about February, 1983 for the advertised position of a switchboard operator/typist. The newspaper announcement listed the qualifications for that position as:

High School Graduate or equivalent with one year experience as office clerical/recorder, switchboard experience and typing of at least 40 words per minute.

Shorthand ability was not listed as a requirement for the position in the newspaper advertisement.

Ms. Morris had worked previously for the Authority from July 1981 through August, 1982 at which time she was laid off. Her prior employment with the Authority was in the capacity of clerk typist, processing flood damage claims. During the course of that employment she, as well as other employees, had taken turns operating the switchboard when the switchboard operator was not present.

Before her employment at the Authority, Ms. Morris had prior experience working as a secretary for a local church and working with a flood relief project, although she did not include that information on her application for the switchboard operator position.

In February, 1983, the Authority placed the advertisement in the local newspaper for the position of switchboard operator/typist and received 43 applications for that position, including Ms. Morris' application.[1] The Authority's board members recommended that four people be interviewed for the position. Ms. Morris was not among those selected to be interviewed.

---

1. At the same time that the Authority advertised for the position of switchboard operator/typist, it advertised for the position of clerk/typist. One hundred and forty three people applied for the two jobs and eight people were selected to be interviewed. Ms. Morris also applied for the position of clerk/typist; a position which she had previously held with the Authority. She was also rejected for that position, but did not file suit over that rejection. The position of clerk/typist was filled by a minority candidate.

After another person was hired, Ms. Morris tried unsuccessfully to find other employment. In 1985, she was unable to continue looking for work due to personal/health reasons.

## PROCEDURAL HISTORY

Ms. Morris filed a complaint with the Commission in which she alleged that the Authority had not hired her because she was a minority (Black), in violation of Section 5(a) of the Pennsylvania Human Relations Act, 43 P.S. § 955. The Commission investigated the matter and found probable cause to credit her allegation and attempted unsuccessfully to conciliate the matter. Carl H. Summerson, the hearing examiner, conducted a hearing and recommended a decision in favor of Morris, concluding that she had made out a *prima facie* case of discrimination and the Authority failed to articulate a legitimate non-discriminatory reason why Ms. Morris was not hired. The Commission adopted the findings of fact, conclusions of law and opinion of the hearing examiner. On October 28, 1987, the Commission entered a final order which directed the Authority to cease racial discrimination and awarded Ms. Morris $22,-265.98 in back pay plus interest.

The Authority appealed to the Commonwealth Court. Judge McGinley, writing for the panel, found that Ms. Morris had failed to meet her initial burden of establishing a *prima facie* case of discrimination. 124 Pa.Cmwlth. 344, 556 A.2d 479. Then Judge (now President Judge) Craig dissented, finding that the commission's findings were supported by substantial evidence and that the decision of the commission should be affirmed.

## DISCUSSION

■ The function of this Court is not to review the evidence anew. Rather, "[i]t is well established that the findings of the Commission may not be disturbed on appeal if they are in accordance with the law and are supported by substantial evidence." *General Elec. Corp. v. Com., Penn-*

*sylvania Human Relations Com'n,* 469 Pa. 292, 296, 365 A.2d 649, 651 (1976). Thus, our review is limited to determining whether Ms. Morris presented substantial evidence to support her claim of discrimination and whether such a decision was in accordance with the law.

Our starting point in this case is the Human Relations Act, 43 P.S. § 955, which provides:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, ... (a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required.

Interpretation of this section has been the subject of much litigation in the last several years. See, *e.g. General Electric, supra; Winn v. Trans World Airlines, Inc.,* 506 Pa. 138, 484 A.2d 392 (1984); and *Allegheny Housing Rehabilitation Corp. v. Com., Pennsylvania Human Relations Com'n,* 516 Pa. 124, 532 A.2d 315 (1987).

In *General Electric,* this Court adopted the United States Supreme Court's analysis as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for establishing a *prima facie* case of discrimination.

[A] *prima facie* case of discrimination ... is made out if the complainant establishes that he is a member of a protected minority, that he applied for a job for which he was qualified, that his application was rejected and that the employer continued to seek other applicants of *equal* qualification. [cites omitted] Once a complainant establishes these elements the burden then shifts to the employer to justify his employee selections on the basis of job-related criteria which are necessary for the safety and

efficiency of the enterprise. 469 Pa. at 304–305, 365 A.2d at 655–656. (emphasis supplied).

The purpose of this test is to " 'eliminate[ ] the most common nondiscriminatory reasons' for the employer's action." *Allegheny Housing, supra* 516 Pa. at 129, 532 A.2d at 318 (1987), quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

As the United States Supreme Court said in *Burdine,*

The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a proponderance (sic) of the evidence that she applied for an available position for which she was qualified, *but was rejected under circumstances which give rise to an inference of unlawful discrimination. Id.,* at 253, 101 S.Ct. at 1094 (emphasis supplied).

In his Conclusions of Law, the hearing examiner found that Ms. Morris had set forth sufficient facts to establish a *prima facie* case of discrimination under the pertinent test:

a. She was a member of a racial minority;

b. She applied for and was qualified for a job for which the Respondent was seeking applicants;

c. She was rejected; and

d. The rejection was under circumstances which give rise to an inference of discrimination.

In support of its Conclusions of Law, the hearing examiner found the following facts:

15. At a regularly scheduled meeting of the board [of the Authority], board member Gentile asked if prior employees had been contacted regarding the Switchboard Operator/Typist opening.

16. Despite board member Gentile's concern, the Respondent simply accepted applications from anyone, thereby providing former employees with no special advantage.

21. Repak, Herald, and Meske [Authority board members] based their selections totally on information con-

tained in the application forms received by the Respondent.

24. Morris met the required qualifications for the position of Switchboard Operator/Typist.

25. Neither Kerr nor the three others selected to be interviewed had prior work experience with the Respondent.

■ The hearing examiner made no findings, however, that Ms. Morris was *better* qualified or even as *well* qualified as the candidates who were chosen to be interviewed. As the statute and case law establishes, the employer must continue to seek applications from others of *equal* qualifications. Thus, the error of the commission was in its failure to require Ms. Morris to show that she met the fourth prong of the test; namely that the Authority continued to seek applicants of equal qualifications after rejecting Ms. Morris. Rather, the facts reflect that the Authority continued to seek applicants of better—not equal—qualifications.[2]

At the hearing, Ms. Morris testified on her own behalf. She did not testify that she was better qualified than the other candidates or even as well qualified. She simply testified about her work history with the Authority and testified that she had been complimented during her tenure.

In her case-in-chief, Ms. Morris also called an Authority employee, Nancy Herald, as a witness. Ms. Herald had been an employee of the Authority for twenty-eight years and was, at the time of the hearing and of the application

**2.** The hearing examiner stated in his opinion that;

[r]eviewing the *McDonnell Douglas prima facie* formula it becomes readily apparent that the only portion in need of adjustment here is the fourth element. In a refusal to hire case, the first three factors will invariably remain the same. In my opinion, because of the pool hiring process presented here, the fourth element should simply become: was the rejection under circumstances which give rise to an inference of discrimination. See *Burdine.*

We believe that the elimination of the fourth element was a critical error on the part of the hearing examiner. In order to establish a *prima facie* case in this matter, it was absolutely essential that the complainant establish that the Authority continued to seek applicants of equal qualifications. Without that element, there arose no "inference of discrimination."

review, employed as the Secretary to the Board Administrative Manager. As part of her job, Ms. Herald was part of the committee responsible for selecting candidates to be interviewed. Ms. Herald testified that she concurred in the selection of the eight candidates to be selected from the total 143 applicants (four for the clerk/typist and four for the switchboard operator/typist). She also stated that the selection was based on the information submitted on the application. Several people applied who had worked previously for the Authority, but they were not treated differently than any other applicants. Specifically, she stated that "we just based it on the information we received on the application itself."

When asked to compare Ms. Morris' application with the four applicants selected to be interviewed, Ms. Herald stated that the four had "quite a bit of job experience." "On Eula's there is only one (1) prior experience." Ms. Herald also stated that applicant's race was not present on the application form.

During the appellant's case-in-chief, the applications of Ms. Morris and the four candidates selected to be interviewed for the switchboard operator/typist position were admitted into evidence.

Ms. Morris called no additional witnesses. Ms. Morris' application only listed her prior work history with the Authority. It did not include her other work history. The other applicants who were ultimately selected to be interviewed included much more extensive work history on their applications. Ms. Morris contends that because she had been employed by the Authority before she applied for the position of switchboard operator/typist, the Authority had access to her earlier application in which she listed other work history and the board should have looked at her prior application.

This argument is without merit. The findings of fact made by the hearing examiner state that the decision to interview candidates was made solely on the basis of the applications submitted. Thus, she was treated in an equal

manner as the other applicants. The findings of fact also state that prior employees were not given preferential treatment.

Thus, based on our review of the facts of this case, we are constrained to find that she failed to establish a *prima facie* case of discrimination in that she failed to put on any evidence to show that the Authority continued to seek applicants of *equal* qualifications after they rejected her. To the contrary, the Authority sought better qualified applicants.

In order to establish the fourth prong of the *McDonnell Douglas/General Electric* test, Ms. Morris could not simply show that she met the minimum requirements as listed in the newspaper. For if that was all that was necessary to prove, any minority not selected to be interviewed who met the qualifications listed in the newspaper would be able to establish a *prima facie* case. Taken to its logical extreme, that would mean that if 100 persons applied for the job, 50 were minorities, and all 100 met the minimum requirements listed in the job description, any minority not selected would be able to prove a *prima facie* case of discrimination—even if the person selected was also a minority. That would be an absurd result. Rather, our case law requires that the unsuccessful candidate establish that she was as well qualified as the candidates selected to be interviewed. For that reason, we believe that the Commonwealth Court was correct in its decision that Ms. Morris failed to present a *prima facie* case of discrimination.[3]

**3.** Although the Authority argues that the complainant must establish that she was "the best able and most competent," no majority of this Court has ever placed such an onerous burden on a plaintiff seeking to establish a *prima facie* case. *See, e.g. General Electric, supra, Winn v. Trans World Airlines, Inc. supra, Com., Dept. of Transp. v. Pennsylvania Human Relations Com'n,* 510 Pa. 401, 508 A.2d 1187 (1986), and *Allegheny Housing, supra.* We note that applicability of the phrase "best able and most competent" has caused considerable consternation during the last several years. See, *e.g., Winn, supra,* Opinions in Support of Affirmance (Nix. C.J., and Larsen, J.) and Opinion in Support of Reversal (Flaherty, J.); *Com., Dept. of Transp., supra,* (Papadakos, J. concurring opinion); *Allegheny Housing, supra,* 516 Pa. at 128, n. 2, 532 A.2d at 317, n. 2. However, in the case *sub judice,* we

The law does not require that minorities be treated more favorably than non-minorities. Rather, it requires that they not be treated less favorably. Where as here, the Authority used a facially neutral method of reviewing applications, there can be no supportable claim of discrimination.[4] As we stated in *General Electric, supra,* "fair employment laws were never intended to interfere with employment policies which maximize efficiency and productivity simply because those policies have an unintended discriminatory impact." 469 Pa. at 303, 365 A.2d at 655.

Thus we find that the facially neutral method of reviewing applications did not establish "circumstances which give rise to an inference of unlawful discrimination." *Burdine, supra* 450 U.S. at 253, 101 S.Ct. at 1094. Rather, Ms. Morris was treated no differently from others applying for the same position. She simply did not establish that she was as well qualified as the other four who were chosen to be interviewed.

For the reasons set forth herein, we find that the decision of the Commission was not supported by substantial evidence and accordingly affirm the decision of the Commonwealth Court reversing the decision of the Commission.

Affirmed.

NIX, C.J., and LARSEN, J., file a dissenting opinion.

NIX, Chief Justice, dissenting.

In my judgment, the majority's reasoning fails on two grounds. First, as Judge Craig aptly notes in his Dissenting Opinion, the Authority should not be permitted to restrict the hiring process by blinding itself to independent facts of which committee members are aware. The Authority's position that it was unaware of Ms. Morris' prior work

need not reach this issue as we find that the complainant did not establish that she was even as well qualified as those who were selected to be interviewed.

**4.** We note that this is not a case in which there is a claim that a facially neutral employment policy has had a discriminatory impact on protected classes.

experience because that information was not listed on the application is incredible in light of the fact that two committee members possessed personal knowledge of Ms. Morris' prior employment with the Authority. Moreover, the qualifications of that previous employment coincided precisely with those of the position the committee sought to fill in the instant case. The Authority also cannot conceivably deny having knowledge of Ms. Morris' race simply because that fact was not stated on the application; the committee members who were personally acquainted with Ms. Morris most certainly were aware of her race. To paraphrase Judge Craig, the authority should not be permitted to don "vision-narrowing blinders" at its own choosing.

It should also be emphasized that the Court, in determining that the commission's decision is not supported by substantial evidence, has substituted its own factfindings for those of the hearing examiner. The hearing examiner is free to believe or disbelieve any evidence presented, and the examiner's findings are to be upheld if they are supported by substantial evidence. 2 Pa.C.S. § 704. *See also Civil Service Commission of City of Philadelphia v. Farrell,* 99 Pa.Commw. 631, 513 A.2d 1123 (1986); *Ross v. Civil Service Commission,* 98 Pa.Commw. 565, 511 A.2d 941 (1986); *Appeal of McClellan,* 82 Pa.Commw. 75, 475 A.2d 867 (1984). The examiner specifically found that the Authority's witness could not explain why Ms. Morris was not hired for the position, Finding of Fact No. 27; thus, the Authority's evidence, cited by the majority, that the other applicants had more work experience than Ms. Morris obviously was rejected by the examiner.[1]

Accordingly, I would reverse the decision of the Commonwealth Court and reinstate the order of the Commission.

1.  The examiner's finding of fact is to be controlling except where not supported by substantial evidence. 2 Pa.C.S. § 704. *See also Civil Service Commission of City of Philadelphia v. Farrell,* 99 Pa.Commw. 631, 513 A.2d 1123 (1986); *Ross v. Civil Service Commission,* 98 Pa.Commw. 565, 511 A.2d 941 (1986); *Appeal of McClellan,* 82 Pa. Commw. 75, 475 A.2d 867 (1984).

82

LARSEN, Justice, dissenting.

I dissent, and in support thereof, adopt and cite the dissenting opinion of President Judge David Craig, *Johnstown Redevelopment Authority v. Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission,* 124 Pa.Cmwlth. 344, 556 A.2d 479 (1989).