Maria SUDIMAK (Nee Thomas),
Plaintiff,

v.

Joseph C. PILLUS and Dorr–Oliver
Incorporated, Defendants.

Civ. A. No. 91–1167.

United States District Court,
M.D. Pennsylvania.

March 30, 1995.

G. Thompson Bell, III, Stevens & Lee,
Reading, PA, for Maria Sudimak.

Francis M. Milone, Valerie I. Harrison,
Morgan, Lewis & Bockius, Philadelphia, PA,
for Joseph C. Pillus and Dorr–Oliver Inc.

### MEMORANDUM

VANASKIE, District Judge.

Plaintiff Maria Sudimak has moved for a new trial on her retaliatory discharge claim against Dorr–Oliver Incorporated ("Dorr–Oliver") under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S.A. §§ 951, *et seq.* Ms. Sudimak contends that, in light of the jury's affirmative response to the special verdict question of whether she had "met her burden of proving that Dorr–Oliver's stated reason for terminating her was not true," the jury's negative answer to whether Ms. Sudimak had "met her burden of proving that the determinative factor in the decision to termi-

nate her employment ... was the filing of a complaint of discrimination," cannot stand. She asserts that because "[t]he jury rejected all possible explanations for [her] termination other than unlawful retaliation, ... the only conclusion the jury could have reached on the evidence presented was that [she] was terminated unlawfully in retaliation for her filing of a complaint with the Pennsylvania Human Relations Commission." (Plaintiff's Supporting Brief (Docket Entry 54 at 8–9).)

Ms. Sudimak has also requested that judgment be entered in her favor by the Court on her employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*[1] Essentially, she contends that preclusive effect must be given to the jury's rejection of Dorr–Oliver's proffered reason for her discharge, but that the jury's finding on the retaliation issue must be ignored. Consistent with her challenge to the jury's verdict, Ms. Sudimak argues that "[o]nce Dorr–Oliver's stated reason is eliminated, it is illogical to reach any conclusion other than that Dorr–Oliver was motivated by unlawful discrimination." ("Argument in Favor of Maria Sudimak's Title VII Claim" (Docket Entry 55) at 5.)

Dorr–Oliver, relying upon *Saint Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), argues that, while the jury may not have believed that the reason articulated by Dorr–Oliver for terminating Ms. Sudimak was not the true reason, it does not necessarily follow that a desire to retaliate against Ms. Sudimak was a determinative factor in her firing. With respect to the Title VII claim, Dorr–Oliver argues that under controlling precedents of the United States Court of Appeals for the Third Circuit, the jury's rejection of Ms. Sudimak's PHRA claim is conclusive as to the parallel federal law claim.

Because it is evident that the Court's decision in *Hicks* requires a plaintiff to convince the factfinder *both* that the employer's prof-

fered reason for termination was false *and* that discrimination was the real reason for the discharge, —— U.S. at ——, 113 S.Ct. at 2752, 125 L.Ed.2d at 422, Ms. Sudimak's challenge to the jury verdict must be rejected. Furthermore, under *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1483 (3rd Cir. 1990), and *Roebuck v. Drexel University,* 852 F.2d 715, 737 (3rd Cir.1988), the jury's verdict in favor of Dorr–Oliver on the PHRA claim is controlling on Ms. Sudimak's Title VII claim. Accordingly, the Motion for a New Trial will be denied and judgment will be entered in favor of Dorr–Oliver on the Title VII claim.

## I. *STATEMENT OF THE CASE*

Ms. Sudimak commenced this action against Dorr–Oliver in the Court of Common Pleas of Luzerne County, asserting claims of sexual harassment and discrimination under the PHRA and Title VII.[2] Essentially, Ms. Sudimak alleged that unwelcomed sexual advances and comments at Dorr–Oliver created a hostile, offensive and intimidating work environment. She further alleged that she had been terminated from her employment in retaliation for her refusal to submit to sexual advances or to tolerate sexual harassment. Finally, she claimed her discharge was in retaliation for having filed a complaint with the Pennsylvania Human Relations Commission ("PHRC").

Dorr–Oliver removed the action to this Court on September 4, 1991. By Memorandum and Order filed August 27, 1992, (Docket Entry 19), the Hon. Richard P. Conaboy granted summary judgment in favor of Dorr–Oliver on Ms. Sudimak's claims of sexual harassment and discrimination. Judge Conaboy denied summary judgment on the retaliatory discharge claim.

Trial on the retaliatory discharge claim commenced before a jury on May 9, 1994. The evidence introduced at trial indicated that Ms. Sudimak began working for Dorr–

---

1. This case arose prior to the effective date of the Civil Rights Act of 1991, Pub.L. 102–166, 105 Stat. 1071, and Ms. Sudimak was therefore not entitled to a jury trial on her Title VII claim. *See Landgraf v. USI Film Products,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

2. Ms. Sudimak also named as a defendant Joseph C. Pillus, who was her immediate supervisor at Dorr–Oliver. For purposes of this Memorandum, "Dorr–Oliver" refers to both defendants.

Oliver in its accounting department in Hazleton, Pennsylvania on December 21, 1987. The initial written performance evaluation for Ms. Sudimak was prepared by Mr. Pillus in April of 1988. The evaluation indicated that Ms. Sudimak needed improvement in the areas of job knowledge, work quality, judgment, and persuasive and supervisory abilities. She was rated "better than most" in the categories of work quantity, cooperativeness and initiative. She received satisfactory ratings in the areas of dependability, planning and organization. Overall, Ms. Sudimak was given a satisfactory performance rating.

In early 1989, Mr. Pillus perceived a decline in Ms. Sudimak's performance and attitude. By memorandum dated October 9, 1989, Mr. Pillus issued a warning to Ms. Sudimak concerning her work attitude. (Defendant's Exhibit 14.) [3] Mr. Pillus complained that Ms. Sudimak's attitude was unacceptable, that her attendance had "dropped off," and that she was spending so much time socializing on the job that she was "on the verge of insubordination." Mr. Pillus warned that "[i]f your attitude and performance don't improve immediately, I plan to give you five (5) days off, without pay. The step after that is dismissal."

Despite this written warning, Ms. Sudimak received a budgeted pay increase of 2.7% in November of 1989. A "Performance Rating Sheet" completed by Mr. Pillus on December 1, 1989 gave Ms. Sudimak an over-all rating of satisfactory, while noting that she needed improvement in the areas of cooperativeness, judgment, and planning and organization. (Plaintiff's Exhibit 5.)

In February of 1990, Ms. Sudimak was given a disciplinary suspension of three days. In March, 1990, Mr. Pillus and George Hardish, Dorr–Oliver's Manager of Industrial Labor Relations and Manufacturing, developed a written "Plan for Improvement" for Ms. Sudimak. (Plaintiff's Exhibit 25.) This plan was presented to Ms. Sudimak on March 14, 1990, and identified specific actions that she

should take in the areas of productivity, attitude, and attendance.

On March 28, 1990, Ms. Sudimak filed a complaint with the Pennsylvania Human Relations Commission. The complaint was also filed with the Equal Employment Opportunity Commission. The parties stipulated that Dorr–Oliver did not receive notice of the discrimination complaint until April 17, 1990.

Mr. Pillus testified that he was dissatisfied with Ms. Sudimak's progress under the "Plan for Improvement." He referred to a departmental meeting in which she made an unsatisfactory presentation and exhibited boredom by openly yawning and stretching in an exaggerated manner. He further testified that she berated him in front of other workers and referred to bizarre conduct on the part of Mrs. Sudimak, such as carrying her briefcase around the Dorr–Oliver offices. In an April 17, 1990 "progress review" on the "Plan for Improvement" (Plaintiff's Exhibit 12), Mr. Pillus documented his criticism of Ms. Sudimak's productivity, attitude and attendance. He concluded:

> Her attitude continues to be unacceptable. She is defiant, makes snide remarks, mumbles under her breath when she is asked to do something. The musical good-mornings are obviously intended to antagonize. Again, there are no improvements in productivity and her attitude continues to regress.

Ms. Sudimak was terminated on April 18, 1990, the day after Dorr–Oliver received notice that she had filed a complaint with the PHRC. Dorr–Oliver contended, however, that the decision to fire Ms. Sudimak had actually been made on April 11, 1990. Dorr–Oliver attributed the delay between the decision to terminate and its implementation to such factors as the press of other business and the unavailability of a Dorr–Oliver official prior to the termination date.

Following four days of testimony, the case was submitted to the jury on May 13, 1994 on "special verdict questions." (Docket Entry 49.) The first three questions called for yes

---

**3.** The Memorandum was addressed to "M. Thomas." Thomas was Ms. Sudimak's maiden name.

or no answers, with a negative answer to any of the three ending the deliberations. The special verdict questions and responses were:

1. Do you find that Plaintiff has met her burden of proving that Mr. Skitka, Mr. Hardish, or Mr. Pillus was aware at the time they made the decision to terminate Plaintiff's employment that she had filed a complaint of discrimination with the Pennsylvania Human Relations Commission?

 Yes _x_ No___

2. Do you find that Plaintiff has met her burden of proving that Dorr–Oliver's stated reason for terminating her was not true?

 Yes _x_ No___

3. Do you find that Plaintiff has met her burden of proving that the determinative factor in the decision to terminate her employment on April 18, 1990 was the filing of a complaint of discrimination?

 Yes___ No _x_[4]

In accordance with the answers to the special verdict questions, judgment was entered in favor of Dorr–Oliver and against Ms. Sudimak on her PHRA claim on May 17, 1994. Because the parties disagreed as to whether judgment could be entered in favor of Dorr–Oliver based on the jury's verdict (*see* defense counsel's letter of May 19, 1994 (Docket Entry 51)), a decision on that issue was deferred pending receipt of briefs.

On May 27, 1994, Ms. Sudimak filed her "Post Trial Motion." The only ground advanced in support of her request for a new trial was that "the jury's responses to the Special Verdict Questions were inconsistent." (Plaintiff's Post Trial Motion (Docket Entry 52) at 3.) A supporting brief was filed on June 27, 1994. (Docket Entry 54.) Also on June 27, 1994, Ms. Sudimak filed a document titled "Argument in Favor of Maria Sudimak's Title VII Claim." (Docket Entry 55.) On July 20, 1994, Dorr–Oliver filed a "Con-

solidated Memorandum" in opposition to Ms. Sudimak's briefs. (Docket Entry 56.) A reply memorandum was filed on behalf of Ms. Sudimak on August 3, 1994. (Docket Entry 57.) On August 12, 1994, Dorr–Oliver filed with the Court a letter brief concerning the Third Circuit's decision in *Fuentes v. Perskie,* 32 F.3d 759 (3rd Cir.1994). (Docket Entry 58.) This matter is ripe for disposition.[5]

## II. DISCUSSION

### A. Motion for New Trial

 The unsound premise of Ms. Sudimak's new trial motion is that the jury's answers to the special verdict questions were "internally inconsistent." (Post Trial Motion, ¶ 3.) Essentially, Ms. Sudimak claims that rejection of Dorr–Oliver's "stated reason" for her discharge necessarily required a finding that she was fired in retaliation for having filed an employment discrimination claim. This contention was presented to and squarely rejected by the Court in *Saint Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

Hicks, an African–American, had been employed as a correctional officer at the Saint Mary's Honor Center. Following five years of satisfactory performance, Hicks came under the supervision of John Powell. Thereafter, he became the subject of increasingly severe disciplinary actions, ultimately resulting in his termination. Following a Bench trial, the district court "found that the reasons [the employer] gave were not the real reasons for [Hick's] demotion and discharge." *Id.* at ——, 113 S.Ct. at 2748, 125 L.Ed.2d at 417. Although the reasons for the discharge proffered by the employer were rejected, the district court held that Hicks "had failed to carry his ultimate burden of proving that *his race* was the determining factor in [the] decision first to demote and then to dismiss him." (*Id.;* emphasis in original.) The Court of Appeals reversed, stating:

---

4. It should be noted that Ms. Sudimak does not contend that it was error to submit the case on these special verdict questions, and does not challenge the wording of the jury questions. It should also be noted that Ms. Sudimak does not challenge the jury instructions.

5. I wish to express my sincere appreciation to counsel for the parties in promptly forwarding to the Court copies of the post-trial briefs and letters which I was unable to locate. The copies submitted by counsel will be entered as part of the official court record.

Because *all* of defendants' proffered reasons were discredited, defendants were in a position of having offered no legitimate reason for their actions. In other words, defendants were in no better position than if they had remained silent, offering no rebuttal to an established inference that they had unlawfully discriminated against plaintiff on the basis of his race.

970 F.2d 487, 492 (8th Cir.1992) (emphasis added).

The Supreme Court set aside the appellate court's determination. Responding to the dissent's reliance on earlier Supreme Court precedents, Justice Scalia wrote:

> The dissent [asserts] that if the plaintiff proves the asserted reason to be *false,* the plaintiff wins. But a reason cannot be proved to be a 'pretext for discrimination' unless it is shown *both* that the reason was false, and that discrimination was the 'real reason.' —— U.S. at ——, 113 S.Ct. at 2752, 125 L.Ed.2d at 421–22. [emphasis in original].

Justice Scalia added that "[i]t is not enough, in other words, to disbelieve the employer; the fact finder *must believe* the plaintiff's explanation of intentional discrimination." *Id.,* at ——, 113 S.Ct. at 2754, 125 L.Ed.2d at 424 (emphasis in original). He later elaborated:

> That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of race is correct. That remains a question for the factfinder to answer.... *Id.,* at ——, 113 S.Ct. at 2756, 125 L.Ed.2d at 427.

Ms. Sudimak's attempt to distinguish *Hicks* on the basis that "the jury did not determine all of the reasons proffered by the employer were untrue," (Plaintiff's Supporting Brief at 7), is unavailing.[6] The Eighth Circuit specifically observed that "*all* of defendants' proffered reasons were discredited." —— U.S. at ——, 113 S.Ct. at 2748, 125 L.Ed.2d at 417. (emphasis added). Thus, the syllogism articulated by Ms. Sudimak— "if retaliation and Dorr–Oliver's stated reason are the only possible motivating factors,

and Dorr–Oliver's stated reason is not the true motivating factor, then retaliation must have been the determinative factor" (Plaintiff's supporting brief at 7)—was squarely presented to and expressly rejected by the Supreme Court.

Moreover, by positing that retaliation and Dorr–Oliver's stated reason are the only possible explanations for the discharge, the syllogism is unsound. The jury could have found that Ms. Sudimak's performance was satisfactory and her attitude adequate, but that there was a serious personality clash between her and Mr. Pillus. Moreover, the jury could have found that Dorr–Oliver simply decided to sever the employment relationship for no reason. Another alternative is that the jury, having found that the decisionmakers were aware of the filing of the discrimination complaint, considered that fact but it was not a determinative factor in their decision. Such a finding would be consistent with a determination that the stated reason was not true, since the decisionmakers had in fact considered the filing of a discrimination complaint, but had decided to fire Ms. Sudimak despite, and not because of, the filing of the discrimination complaint.

Recently, our Court of Appeals, in an *en banc* ruling, observed:

> [*Hicks* ] makes clear that the trier of fact in a pretext case is *not limited to a choice between finding that the alleged discriminatory motive or the employer's non-discriminatory explanation was the sole cause of the employment action* ....
> [*Hicks* ] instructs that *this bipolar view of pretext cases is inaccurate.*

*Miller v. Cigna Corp.,* 47 F.3d 586, 595 (3rd Cir., 1995) (emphasis added).

Ms. Sudimak has articulated the "bipolar view" of discrimination cases that our Court of Appeals recognized was rejected by *Hicks.* In this case, it was essential that the jury answer *both* questions in the affirmative to allow Ms. Sudimak to prevail.

In *McKenna v. Pacific Rail Service,* 32 F.3d 820, 826 (3rd Cir.1994), Judge Lewis stated that *Hicks* "ruled *definitively* that a finding that an employer had articulated a

---

**6.** Ms. Sudimak erroneously stated that *Hicks* in-
volved a jury verdict.

pretextual reason for its actions does *not* mandate judgment for a plaintiff." (Emphasis added.) In *McKenna,* our Court of Appeals reversed a jury verdict for the plaintiffs because the trial court had instructed the jury that if the jury rejected the reasons advanced by the employer for the adverse employment action the *"plaintiff will have established his/her claim of intentional age discrimination and you must return a verdict in his/her favor." Id.* at 826 (emphasis added by the court). The instruction rejected by Judge Lewis is no different than the position advanced by Ms. Sudimak.

Our Court of Appeals also reversed a judgment entered in favor of a plaintiff in an age discrimination case where the jury instructions failed to convey the requirement that "[m]ere proof of pretext, without a finding of discrimination, is not by itself sufficient to meet the employee's ultimate burden of proof." *Seman v. Coplay Cement Co.,* 26 F.3d 428, 438 n. 13 (3rd Cir.1994). Writing for the unanimous panel, Judge Garth stated:

> *Hicks* requires that once an employer has met its burden of production by coming forward with a non-discriminatory business reason for discharging a protected employee, the plaintiff-employee must then prove that the business reason was pretextual and that he was intentionally discriminated against on the basis of his age. *Proof of one without the other will not suffice.* This is so because there is 'no authority to impose liability upon an employer for alleged discriminatory employment practices unless an appropriate factfinder determines, according to proper procedures, *that the employer has unlawfully discriminated.' Id.* at 438–39 [emphasis in original and added].

*See also Fuentes v. Perskie,* 32 F.3d at 763 ("the plaintiff must convince the factfinder *'both* that the reason was false *and* that

discrimination was the real reason'") (emphasis in original).

The jury instructions in this case, which are unchallenged by Ms. Sudimak, clearly apprised the jurors that it was not enough to disbelieve Dorr–Oliver's proffered reasons. The jury was told that "plaintiff must prove that but for her filing of the complaint with the PHRC she would not have been fired on April 18, 1990." [7] The jury was further told that "[a] verdict only can be entered in favor of plaintiff if you determine that Dorr–Oliver's justifications are implausible and that the real reason behind Dorr–Oliver's decision was plaintiff's filing of a complaint with the PHRC." The jury was expressly instructed that "simply proving that a reason is false will not suffice unless it has been proven to you that the true reason for Dorr–Oliver's action was plaintiff's filing of her complaint."

■ In addressing a contention that a jury's answers to special verdict questions are inconsistent, the court is to "consider all the circumstances, especially the issues submitted to the jury, the instructions to the jury, and any expressions of the jury extrinsic to their answers to the interrogatories." *Popham v. City of Kennesaw,* 820 F.2d 1570, 1575 (11th Cir.1987). In this case, the jury's answers to the special verdict questions were consistent with the instructions. The jury was told, as required, that Ms. Sudimak had the burden of showing intentional retaliation. That was the ultimate issue of fact and there was nothing inconsistent in rejecting the employer's articulated reason yet finding that Ms. Sudimak had not discharged her burden.[8]

■ In her Supporting Brief, Ms. Sudimak asserts for the first time that under the PHRA she was "not required to show that unlawful retaliation is the determinative fac-

---

7. A transcript of the trial court record has not been ordered by either party to this case. The jury was provided with a written set of instructions, which were also delivered from the bench. The quotations in the text are from the written instructions.

8. During their deliberations, the jury asked the Court to define "determinative." Supplemental instructions on that term were provided, and Ms.

Sudimak does not now challenge those supplemental instructions. (It is my recollection that Ms. Sudimak did not object to the supplemental instructions at the time they were given.) The fact that the jury sought a clarification of that term suggests that the jury had indeed focused on the ultimate issue in this litigation and was not confused in its consideration of the evidence. *See Popham,* 820 F.2d at 1575.

tor if she has shown that Dorr–Oliver's proffered reason for her discharge is untrue." (Docket Entry 54 at 9.) This assertion must be rejected for at least two reasons. First, it is essentially a challenge to the jury instructions and her post-trial motion does not challenge the jury instructions.[9] And second, her assertion is not consistent with state law.

In *McKenna, supra,* our Court of Appeals addressed the question of whether New Jersey would adopt the *Hicks* approach for claims arising under the New Jersey Law Against Discrimination. In answering the question in the affirmative, Judge Lewis relied upon the fact that the New Jersey Supreme Court had applied the analytical framework for discrimination cases set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny, as well as the fact that New Jersey law on presumptions was identical to Federal Rule of Evidence 301, on which the Court had premised its conclusion in *Hicks* that rejection of the employer's proffered reason was not determinative of discrimination. 32 F.3d at 827–30.

The same factors that compelled the court in *McKenna* to hold that New Jersey would follow *Hicks* apply with even greater force here. The Pennsylvania Supreme Court has adopted the *McDonnell Douglas* approach to claims arising under the PHRA. *See e.g., Fairfield Township Volunteer Fire Co. No. 1 v. PHRC,* 530 Pa. 441, 609 A.2d 804, 805–06 (1992). Justice Papadakos explained in a concurring opinion in *Pennsylvania Department of Transportation v. PHRC,* 510 Pa. 401, 508 A.2d 1187, 1191 (1986), that the Pennsylvania Supreme Court "has, in the interest of *uniformity and predictability* in enforcement of equal employment legislation, construed the Human Relations Act in light of principles of fair employment law which have emerged relative to the corresponding federal statute, Title VII . . . ." Since "uniformity and predictability" undergird the Pennsylvania Supreme Court's adoption of

*McDonnell Douglas* and its progeny, it follows that *Hicks* will likewise be adopted.

Furthermore, consistent with the rationale in *Hicks,* the Pennsylvania Supreme Court has consistently recognized that the rebuttable presumption of discrimination arising from evidence sufficient to establish a *prima facie* case is destroyed once the defendant offers a non-discriminatory explanation for the adverse employment action. *See, e.g., Allegheny Housing Rehabilitation Corp. v. PHRC,* 516 Pa. 124, 532 A.2d 315, 319 (1987). In harmony with *Hicks,* the Pennsylvania Supreme Court has recognized that the *McDonnell Douglas* framework does not result in a transfer of burdens of proof, but merely a shift in the burden of coming forward with evidence. *Id.,* 532 A.2d at 318. Thus, the Pennsylvania Supreme Court has stated:

> If . . . the defendant offers a non-discriminatory explanation for the dismissal, the *presumption drops from the case.* As in any other civil litigation, the issue is joined, and the entire body of evidence produced by each side stands before the tribunal to be evaluated according to the preponderance standard: *has the plaintiff proven discrimination by a preponderance of the evidence? Id.,* 532 A.2d at 319. [emphasis added].

*Hicks* was deemed to be consistent with New Jersey law even though the New Jersey Supreme Court had not shown "slavish devotion" to the *McDonnell Douglas* framework. *McKenna,* 32 F.3d at 827–28. Contrary to the New Jersey Supreme Court, the Pennsylvania Supreme Court has not waivered in its application of *McDonnell Douglas.* Accordingly, Ms. Sudimak's contention that she was not required to show unlawful retaliation under state law must be rejected.[10]

In short, the jury was properly instructed that at all times the burden remained on Ms. Sudimak to prove unlawful retaliation, and

---

**9.** It is my recollection that Ms. Sudimak did not object to the *Hicks* instruction at the time of trial.

**10.** The only case cited by Ms. Sudimak in support of her position, *H.S.S. Vending Distributors v. PHRC,* 162 Pa.Cmwlth. 602, 639 A.2d 953 (1994), did not address the applicability of *Hicks.*

Indeed, there is nothing in the reported opinion to indicate that the court was confronted with the question of whether a rejection of the employer's proffered reason automatically entitled the plaintiff to prevail.

the mere fact that the jury disbelieved the reasons articulated by Dorr–Oliver for its decision to terminate Ms. Sudimak did not compel a finding of unlawful retaliation. The jury's answers to the special verdict question are consistent with the instructions and do not form the basis for a new trial.

### B. *Title VII Claim*

 In her "Argument in Favor of Title VII Claim," Ms. Sudimak contends that the jury's affirmative answers to the first two special verdict questions are binding, citing *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1483 (3rd Cir.1990), and *Roebuck v. Drexel University,* 852 F.2d 715, 737 (3rd Cir.1988). She argues that the jury's negative answer to the third question is not binding because it was inconsistent with the affirmative answer to the second question. Because this premise has been rejected, Ms. Sudimak's argument that the Court is not bound by the negative answer to the third question must fail.

In *Roebuck,* the Third Circuit ruled that "because the elements of proof are identical in § 1981 and Title VII claims, ... a trial court is bound in a Title VII case to conform its verdict to the findings of the jury in a concurrently tried § 1981 case." 852 F.2d at 738. In *Andrews,* the trial court, addressing the plaintiffs' Title VII claims, held that the evidence did not establish sexual harassment notwithstanding a jury verdict for the plaintiffs on their parallel claims under 42 U.S.C. § 1983. The Third Circuit held that the trial court was bound by the jury's determination and could not reject it. 895 F.2d at 1483–84. It has also been recognized that a jury's verdict on state law discrimination claims is binding on the parallel Title VII claims. *See, e.g., Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1048 (2d Cir.1992); *Sorlucco v. New York City Police Department,* 971 F.2d 864,

873–74 (2d Cir.1992); *Baker v. Emery Worldwide,* 789 F.Supp. 678, 682 (W.D.Pa. 1991); *Hayne v. Rutgers University,* 1990 WL 484133, 1990 U.S.Dist. LEXIS 19994 (D.N.J., September 27, 1990); *See also, Tidwell v. Fort Howard Corp.,* 989 F.2d 406, 412 (10th Cir.1993) (jury determination of Equal Pay Act claim is determinative of Title VII claim).

In this case, the jury's determination that Ms. Sudimak failed to discharge her burden of proving that her filing of a complaint of discrimination was a determinative factor in the decision to terminate her employment obviates further consideration of her Title VII claim. Accordingly, judgment will be entered in favor of Dorr–Oliver on the Title VII claim.[11]

An appropriate Order is attached.[12]

---

11. Even if Ms. Sudimak's arguments concerning the inconsistency of the jury verdict was meritorious she would not be entitled to judgment on her Title VII claim. As indicated in *Roebuck,* if the jury verdict is set aside, judgment on the Title VII claim must be deferred until the state law claim has been re-tried to the jury. *Roebuck,* 852 F.2d at 738–39. *Accord, Miller v. Fairchild Industries, Inc.,* 885 F.2d 498, 506–07 (9th Cir.

1989), *cert. denied,* 494 U.S. 1056, 494 U.S. 1056, 108 L.Ed.2d 764 (1990).

12. Because of the uncertainty as to whether Ms. Sudimak effectively withdrew her claims against Mr. Pillus at the time of trial, judgment will be entered in his favor on the Title VII claims, just as judgment was entered in his favor on the state law claims.