## Commonwealth, Department of Environmental Resources v. Landis

*Nels J. Taber* and *Geoffrey J. Ayres,* for the Commonwealth.
*Harold S. Landis,* for the appellant.

MYERS, *Member,* November 15, 1994—

## SYNOPSIS

The board issues an adjudication determining the amount of civil penalties where the issue of liability has already been established in a partial default adjudication. Where the defendant was not permitted to offer any evidence at the merits hearing on the amount of penalties to be assessed as a sanction for his failure to comply with the board's orders, and where the defendant fails to file any post-hearing brief, the board has before it only the Department of Environmental Resources' evidence. DER's calculations and rationale are advisory only, however, and are neither accepted nor rejected. We conclude on the basis of the evidence that a total assessment of $10,000 against the defendant is reasonable. We accordingly assess that total amount of civil penalties.

## INTRODUCTION

This matter was initiated on December 19, 1991 by DER's filing of a complaint for civil penalties pursuant to the Clean Streams Law, the Act of June 22, 1937, P.L. 1987, as amended, 35 P.S. §691.1 et seq. The complaint alleged that Harold S. Landis violated the Clean Streams Law and rules and regulations promulgated thereunder. This board issued an opinion and order on September 10, 1992, entering a partial default adjudication which established Landis' liability for the violations alleged in the complaint. See *DER v. Harold Landis,* 1992 EHB 1174.

The board held a hearing on November 30, 1993 to determine the amount of penalties to be assessed. Landis was barred by a board order issued March 23, 1993, from presenting any evidence at this hearing as a sanction pursuant to 25 Pa. Code §21.124 for his failure to comply with the board's prior orders to him. By order issued January 12, 1994, the board ordered each party to file its respective post-hearing brief. DER filed its post-hearing brief on February 9, 1994; Landis failed to file any post-hearing brief.

Any arguments not raised by the parties' post-hearing briefs are deemed waived. *Lucky Strike Coal Co. v. Pennsylvania DER,* 119 Pa. Commw. 440, 547 A.2d 447 (1988). After a full and complete review of the record, we make the following findings of fact.

## FINDINGS OF FACT

(1) Plaintiff is DER, which instituted Counts I through III of its complaint pursuant to section 605 of the Clean Streams Law, 35 P.S. §691.605. (Paragraph 1 of DER's complaint.)

(2) Defendant is Landis, whose address is 415 Rawlinsville Road, Willow Street, PA 17584. (Paragraph 3 of DER's complaint.)

(3) At the time of the incidents addressed in DER's complaint, Landis was the owner and operator of a farm located in Pequea Township, Lancaster County, on which he conducted a dairy and poultry operation. (Paragraph 4 of DER's complaint.)

(4) DER water quality specialist Randy King inspected Landis' farm in July of 1985 in connection with manure run-off from the farm. (N.T. 11; C ex. 1.)[1]

(5) DER's Bureau of Water Quality Management sent Landis a follow-up letter, dated October 24, 1985, which stated that Landis was having a problem with manure run-off from his fields "due to over application and leakage during transport." This letter warned Landis that his improper manure handling would subject him to being fined pursuant to the Clean Streams Law, if any discharge of manure occurred into waters of the Commonwealth, and advised him to contact DER if he had any questions. (N.T. 11; C ex. 1.) Landis did not subsequently contact DER. (N.T. 11.)

(6) Water quality specialist King's June 26, 1986 inspection of Landis' farm revealed that the chicken manure storage lagoon had breached, causing 6,000 to 7,000 gallons of manure to discharge into Goods Run resulting in a fish kill and adversely affecting the stream for approximately three miles. (N.T. 11; C ex. 3; paragraph E of exhibit B to DER's complaint.)

---

1. "N.T." is a reference to the notes of testimony of the merits hearing held on November 30, 1993. "C ex." is a reference to one of the Commonwealth's exhibits.

(7) DER requested Landis, by a letter dated July 8, 1986, to develop a manure management plan addressing his poultry and dairy operations and to submit a report to DER describing the steps Landis planned to take to prevent any future discharges of manure. (N.T. 11-12; C ex. 3.)

(8) Landis failed to submit a manure management plan to DER in response to DER's July 8, 1986 letter. (N.T. 27.)

(9) Landis' chicken manure storage lagoon overflowed on or about October 7, 1989, resulting in a discharge of 2,000 gallons of manure into Goods Run, causing a fish kill and adversely affecting the stream for a distance of approximately three miles. (N.T. 13; paragraph 7 of DER's complaint; C ex. 6.)

(10) DER, by a letter dated March 1, 1990, requested Landis to attend an administrative conference scheduled for March 9, 1990 to discuss a resolution of his manure management problems, and requested that he submit and implement a manure management plan. (N.T. 13; C ex. 4.)

(11) Landis failed to appear at the DER conference and mistakenly appeared at the Lancaster County Conservation District Office on March 9, 1990. (N.T. 13-14; C ex. 5.)

(12) DER rescheduled its meeting with Landis for March 16, 1990, by a letter dated March 13, 1990 which included directions to DER's office. (N.T. 14; C ex. 5.)

(13) Landis failed to appear at the March 16, 1990 meeting. (N.T. 14.)

(14) DER issued an order to Landis on June 5, 1990, requiring Landis, inter alia, to prepare, submit to DER for approval, and implement a manure management

plan. (N.T. 14; C ex. 6.) This DER order imposed requirements as to both Landis' chicken manure storage lagoon and his dairy manure storage pit. (N.T. 16; C ex. 6.)

(15) Landis responded to DER's June 5, 1990 order with a handwritten note on the original cover letter of DER's June 5, 1990 order stating that the chicken house no longer existed. (N.T. 15.)

(16) Landis failed to appeal DER's June 5, 1990 order to this board. (C ex. 10.)

(17) Lee A. Yohn is a compliance specialist in DER's Bureau of Water Quality Management. Yohn drafted DER's complaint for civil penalties and calculated DER's civil penalty assessment request. (N.T. 7-8.)

(18) Yohn considered the severity of the discharge, the damage it caused, Landis' willfulness, and the site history pursuant to DER's guidance document entitled Civil Penalty Assessment Procedure for Pollution Incidents, and section 605 of the Clean Streams Law. (N.T. 18-22; C ex. 9.)

(19) As of the time of DER's complaint, Landis had neither developed any manure management plan nor taken any other measure necessary to manage the storage and disposal of manure generated on his farm, as required by DER's letter dated July 8, 1986 and DER's order issued June 5, 1990. (Paragraph 15 of DER's complaint.)

## DISCUSSION

The September 10, 1992 opinion by the board (1992 EHB 1174) established Landis' violations of the Clean Streams Law and his liability for civil penalties under section 605 of that statute (35 P.S. §691.605), as alleged in DER's complaint. Based on that ruling, it is now

our duty to consider the evidence offered by the parties at the merits hearing and exercise our discretion to determine the appropriate amount of such a penalty. *DER v. Allegro Oil and Gas Company,* 1991 EHB 821. Landis has abandoned any legal contentions regarding the relief sought by DER's complaint as he has failed to file a post-hearing brief. *Lucky Strike, supra.*

Under section 605 of the Clean Streams Law, we may assess a maximum penalty of $10,000 per day per violation of the Clean Streams Law. Section 605 also directs us to consider the willfulness of the violation, the damage or injury to the waters or the use of the waters of the Commonwealth, the costs of restoration, and other relevant factors. *DER v. Canada-PA Ltd.,* 1989 EHB 319.

Count I of DER's complaint seeks an assessment of civil penalties in the amount of $4,500 for the October 7, 1989 overflow of the chicken manure storage lagoon which resulted in a discharge of approximately 2,000 gallons of manure into Goods Run, causing a fish kill and adversely affecting the stream for a distance of approximately three miles. DER alleges this incident was a violation of sections 201, 202, and 611 of the Clean Streams Law, 35 P.S. §§691.201, 202, and 611. Count II of DER's complaint seeks an assessment of civil penalties in the amount of $500 against Landis for his failure to notify DER of the pollution incident on October 7, 1989. DER's complaint asserts Landis' failure to notify DER of this incident was a violation of 25 Pa. Code §101.2(a) and section 611 of the Clean Streams Law, 35 P.S. §691.611. Count III of DER's complaint seeks an assessment of $5,000 in civil penalties against Landis. In Count III, DER alleges that since July 8, 1986, Landis has failed to develop plans and take other measures necessary to manage the storage

and disposal of the manure generated on the Landis farm in a manner so as to prevent the manure from reaching the waters of the Commonwealth, as required by DER's July 8, 1986 letter and DER's June 5, 1990 order. DER further alleges at Count III that Landis' prolonged failure to take all necessary measures to prevent polluting substances from reaching waters of the Commonwealth constituted a violation of 25 Pa. Code §101.3(a), and that Landis' failure to comply with a DER order constituted unlawful conduct under section 611 of the Clean Streams Law, 35 P.S. §691.611.

Lee A. Yohn, who is a compliance specialist in DER's Bureau of Water Quality Management, drafted DER's complaint in this matter and calculated DER's civil penalty assessment request. In arriving at the proposed civil penalty assessment amounts, Yohn followed DER's guidance document entitled Civil Penalty Assessment Procedure for Pollution Incidents. He considered the severity of the discharge, the damage it caused, Landis' willfulness, and the site history pursuant to this guidance document and section 605 of the Clean Streams Law. Following this procedure, Yohn came up with a proposed penalty of $4,500 for Count I, $500 for Count II and $5,000 for Count III, a total of $10,000.

In proceedings like this, where the board has the statutory power to assess the civil penalties in the first instance, DER's calculations and claims for relief are advisory only. As a result, we will not discuss DER's rationale or consider its applicability to this proceeding. We agree, nonetheless, that a civil penalty assessment in the amount of $10,000 is fair and reasonable. Landis was, at least, reckless in connection with the October 7, 1989 spill incident. As we have explained in past decisions, recklessness is demonstrated by a conscious disregard of the fact that one's conduct may result in a violation of the law. See *Canada-PA,* 1989 EHB at

324. Landis was warned by DER prior to the 1989 incident, in 1985 and 1986, that his improper handling of his farm manure could lead to a violation of the Clean Streams Law and prior spills had occurred in 1985 and 1986, yet Landis failed to address the problem. DER's evidence also shows that there was harm to the waters of the Commonwealth from the October 7, 1989 spill. This incident involved a large amount of polluting substance being discharged from Landis' farm, causing a fish kill and adverse impact to over three miles of stream. Section 605 of the Clean Streams Law allows us to assess a maximum civil penalty of $10,000 per day per violation. We believe that a total civil penalty assessment of $10,000 is appropriate according to the evidence.

A total civil penalty of $10,000 is accordingly assessed against Landis for his violations of the Clean Streams Law.

## CONCLUSIONS OF LAW

(1) The board has jurisdiction over the parties and subject matter of this complaint for civil penalties.

(2) The board has the authority to assess civil penalties under section 605 of the Clean Streams Law, 35 P.S. §691.605.

(3) The discharge from Landis' chicken manure storage lagoon of over 2,000 gallons of manure into Goods Run on October 7, 1989 was a violation of the Clean Streams Law. See 1992 EHB 1174.

(4) A total civil penalty in the amount of $10,000 is reasonable under section 605 of the Clean Streams Law.

## ORDER

And now, November 15, 1994, it is ordered that civil penalties are assessed against Harold S. Landis in the

total amount of $10,000 for violations of the Clean Streams Law. This amount is due and payable immediately into the Clean Water Fund. The Prothonotary of Lancaster County is ordered to enter the full amount of the civil penalty as a lien against any property of Harold S. Landis, together with interest at a rate of 6 percent per annum from the date hereof. No costs may be assessed upon the Commonwealth for entry of the lien on the docket.